**UNITED STATES of America,**
**Appellee.**

v.

**Rufus P. PARTLOW, Appellant.**

**No. 700, Docket 33363.**

United States Court of Appeals,
Second Circuit.

Argued April 23, 1970.

Decided June 22, 1970.

Ira I. van Leer, New York City, for appellant.

Jerome C. Ditore, Asst. U. S. Atty. (Edward R. Neaher, U. S. Atty., for the Eastern District of New York, of counsel), for appellee.

Before MOORE and SMITH, Circuit Judges, and WEINFELD, District Judge.**

PER CURIAM:

Appellant and a co-defendant were charged with two counts of knowing possession of goods stolen from an interstate shipment of freight in violation of 18 U.S.C. § 659. He was found guilty on one count, and not guilty on the other count, by a jury in the District Court for the Eastern District of New York, August 16, 1968, Judge Curtin presiding. On the day of sentencing, December 18, 1968, appellant moved to set aside the verdict on the ground that he had been involuntarily absent from the trial. After a hearing, the court denied appellant's motion and sentenced him to four years imprisonment. We affirm.

** Of the Southern District of New York, sitting by designation.

Appellant claims that he was denied his right to be present at his own trial, secured to him by the fifth and sixth amendments to the Constitution and by Rule 43 of the Federal Rules of Criminal Procedure. He claims that his absence from the trial was involuntary.

The record shows the following sequence of events. Appellant had been arrested on March 28, 1967, and released on bail on May 9, 1967. The trial began with the selection of jurors Friday, August 9, 1968. Although directed to appear the following Monday, August 12, appellant did not appear. After several continuances and unsuccessful inquiries as to appellant's whereabouts, the court granted the government's motion on August 14, 1968 to proceed with the trial in the absence of appellant. The jury's verdicts were returned on August 16, 1968.

At the hearing on his motion to set aside the verdict, December 18, 1968, appellant explained his absence repeating essentially the same story he had first revealed to his Connecticut attorney on September 16, 1968 and to the court by letter on October 11, 1968.

He claims that upon leaving the courthouse on August 9, he was kidnapped at gunpoint and taken face-down on the floor of a car to the basement of a house near Montauk Point, Long Island. There he was handcuffed and chained to a pole which supported the house. His captors questioned him as to what information he had given the authorities, and intimidated him by showing him his car buried in a sand pit as a visual reminder of what might happen to him.

After seven days' captivity he escaped and fled amidst a flurry of gunfire. He hitch-hiked back to Brooklyn and went directly home. After allegedly making cursory attempts to notify the authorities of his whereabouts, he directed his wife to make contact, and then left his home although he thought his house was being watched. He was then recaptured and confined in a warehouse in Brooklyn, where he was permitted to call his wife, but he did not notify his lawyer or the authorities of his plight.

He was thereafter sent on "a job"; he drove a Cadillac car to Cape Cod, Massachusetts. The man he was to see there was in California, so appellant began the return trip. He was apprehended in Connecticut on September 6, 1968, for driving a stolen car without a license. The Connecticut authorities apparently discovered that he was a fugitive around September 13, 1968 and appellant told them he was not scheduled for trial in. Brooklyn until September 23, 1968.

Appellant told his story to his Connecticut attorney on September 16, 1968, to the court by letter on October 11, 1968, but not to his attorney here until the day of sentencing, apparently because he felt he could not consult with his attorney here until he had paid his fees. Although aware of appellant's whereabouts and story through his Connecticut attorney, appellant's Brooklyn attorney made no effort to inform the court until the day of sentencing, December 18, 1968, nor did he offer evidence corroborating appellant's story at the hearing that day.

After a full hearing, the court found that it did not believe appellant's story and denied his motion to set aside the verdict. We agree that appellant voluntarily absented himself from his trial. His story is incredible, and his alleged desire to appear at his trial is belied by his admittedly half-hearted efforts to contact authorities upon his first escape, and by his admitted failure even to attempt to contact authorities thereafter, although he was not restrained by his captors in any way after they allegedly sent him on the Cape Cod mission.

The Constitution does not require the court to discontinue a trial once commenced if the defendant has voluntarily absented himself. Federal Rules of Criminal Procedure, Rule 43 and Advisory Committee Note 2; see State of Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 1060, 25 L.Ed.2d 353 (March 31, 1970) ("We accept instead the statement of Mr. Justice Cardozo

**816**

who, speaking for the Court in Snyder v. Massachusetts, 291 U.S. 97, 106, 54 S.Ct. 330, 78 L.Ed. 674 (1938), said: 'No doubt the privilege [of personally confronting witnesses] may be lost by consent or at times even by misconduct.' "). Cf. Diaz v. United States, 223 U.S. 442, 445, 32 S.Ct. 250, 56 L.Ed. 500 (1912); Falk v. United States, 15 App. D.C. 446 (1899), appeal dismissed, 180 U.S. 636, 21 S.Ct. 922, 45 L.Ed. 709, cert. denied, 181 U.S. 618, 21 S.Ct. 923, 45 L. Ed. 1030 (1901). Although we cannot presume the waiver of constitutional rights, Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), appellant's own explanation of his absence supports the conclusion that he did not make any reasonable attempt to render himself available for trial.

Affirmed.