## JOHN S. COLLINS *v.* STATE OF MARYLAND

[No. 573, September Term, 1970.]

*Decided June 9, 1971.*

The cause was argued before MURPHY, C. J., and ORTH and MOYLAN, JJ.

*Alan H. Murrell* for appellant.

*Clarence W. Sharp, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Julian B. Stevens, State's Attorney for Anne Arundel County,* and *David K. Poole, Jr., State's Attorney for Washington County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

John S. Collins was convicted of nine crimes at a bench trial in the Circuit Court for Washington County on the testimony of a man then dead. The Board of License Commissioners for Anne Arundel County had the authority to grant liquor licenses. The Chairman of the Board was David B. Frye and David L. Sullivan was a mem-

ber of the Board. Collins was attorney to the Board. On 9 May 1969 the Grand Jury for Anne Arundel County returned five indictments containing a total of nine counts presenting that Collins had bribed Frye and Sullivan with respect to two applications for the grant of liquor licenses and that he and one Arthur W. Meleski had conspired together and with Frye to bribe Frye and Sullivan regarding one of the applications.[1] Upon suggestion for removal the indictments were sent to Washington County, consolidated, and came on for trial on 22 June 1970. Sullivan, the principal witness for the State, had died on 2 August 1969 but the State had perpetuated his testimony by taking his deposition on 19 July 1969. The deposition was received in evidence at the trial. Collins claims its admission was error.

It is abundantly clear that in Maryland depositions can be taken in criminal cases only within the limitations of the authority granted by constitutional or statutory provisions or by the concurrent consent of the accused and the prosecution. There has never existed in this State an inherent power in the trial courts to direct the taking of depositions in criminal cases, nor does such power exist today. Whatever authority the courts of Maryland have in this area is conferred by Maryland Rule 727 (Depositions) and those rules in Chapter 400 of the Maryland Rules of Procedure (Depositions and Discovery) which Rule 727 expressly makes applicable to criminal causes. *Kardy v. Shook, J.*, 237 Md. 524; *Young v. State*, 90 Md. 579.

Rule 727, pertaining to depositions in criminal causes, first became effective on 1 January 1950. "It was the con-

---

1. The verdict as rendered by the trial judge does not appear in the transcript of the proceedings. The docket entries as to each indictment read: "Verdict: GUILTY as charged in general." The effect of this was to convict Collins on each count in each indictment. *Manning v. State*, 2 Md. App. 177. See *Boone v. State*, 2 Md. App. 80, 115-117. The docket entries also show that a two year sentence was imposed on the conviction of conspiracy and as to the general conviction under each of the other indictments a general two year sentence was imposed, in each case to run concurrently with the sentence for conspiracy.

sidered opinion of the Court [of Appeals], at the time of the adoption of Rule 727, that depositions in criminal cases should only be taken in accordance with the provisions contained therein." *Kardy v. Shook, J., supra,* at 540.[2] Thus, lacking the concurrent consent of the accused and the State, a deposition in a criminal cause may be properly taken only as provided by Rule 727. It is clear from the record before us that Collins did not consent to the deposing of Sullivan and we do not take it that the State suggests that he did. The inquiry, therefore, is whether the deposition was obtained in accordance with the provisions of Rule 727.

Rule 727 expressly gives an accused the right to be present when a deposition is taken at the instance of the State. Section b provides: "If a deposition is taken at the instance of the State, the accused shall have the right to be present at the taking thereof * * *."[3] Rule 775 (Presence of Accused) reiterates: "The accused shall have the right to be present at the taking of a deposition taken at the instance of the prosecution." We think that the right to be present when a witness is deposed is of constitutional dimension and that the provisions of the Rules so stating are merely declaratory of a right guaranteed by both the United States and Maryland constitutions. Amendment VI to the Constitution of the United States states: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him; * * *." In the Declaration of Rights of the Constitution of Maryland the people of the State of Maryland, "grateful to Almighty God for our civil and religious liberty, and taking into our serious consider-

---

2. The Court emphasized that a deposition permitted to be taken under the Rule is not a discovery device. Its purpose is perpetuation, not discovery, of evidence. 237 Md. at 537.

3. The section continues: "* * * and if in custody, shall be produced at the examination and kept in the presence of the witness during the examination by the officer having the defendant in custody; the State shall pay the reasonable expenses of travel and subsistence of the accused and his counsel in attending such examination."

ation the best means of establishing a good Constitution in this State for the sure foundation and more permanent security thereof," declared, in Article 21, "That in all criminal prosecutions, every man hath a right to be confronted with the witnesses against him; * * *" and added also "a right * * * to examine the witnesses for and against him on oath; * * *." Since a deposition is the testimony of a witness transcribed for use in court in the absence of the witness,[4] when a witness is deposed by the State, the constitutional right of the accused to confront him can only be satisfied if he has the right to be present at the taking of the deposition. Further, we think that the right to presence by the accused at the taking of a deposition arises also from his right to be present at every stage of his trial. This was a fundamental right at common law preserved in this State by Article 5 of the Declaration of Rights and stated with particularity by another provision of Rule 775.[5] When the deposition is used at the trial proper as contemplated, the only opportunity for the accused to be confronted with the witness is at the taking of the deposition. Thus it is patent that the taking of the deposition must be considered to be a stage of the trial.[6] See *State v. Saul,* 258 Md. 100. The right to be present at every stage of the trial is personal to the accused and cannot be waived by his counsel. *Young v. State,* 5 Md. App. 383, 389. And, since the right is constitutional, an effective waiver by

---

4. In its generic sense, a deposition embraces all written evidence verified by oath, and so includes affidavits. In its legal sense, it is the giving of notice to the adverse party enabling him to attend and cross-examine, which especially distinguishes a deposition from an affidavit. Black's *Law Dictionary,* 3rd Ed.

5. "The accused shall be present * * * at every stage of the trial * * *." An exception is in the prosecution for an offense not punishable by death when the defendant voluntarily absents himself after the trial has commenced in his presence.

6. It is certainly as much a stage of the trial as, for example, is a pretrial hearing to suppress tangible evidence because obtained by an unreasonable search or to suppress evidence of identification because tainted by an illegal confrontation. Clearly, to conduct such a hearing in the absence of an accused, unless his presence was effectively waived, would violate his constitutional right of confrontation.

the accused must be within the rule articulated in *Johnson v. Zerbst,* 304 U. S. 458, that is, an intentional relinquishment or abandonment of a known right or privilege. This must be clearly established. Presuming waiver from a silent record is ordinarily impermissible for acquiescence in the loss of fundamental rights may not be presumed. On the contrary every reasonable presumption against waiver must be indulged. *Moore a/k/a Smith v. State,* 7 Md. App. 330, 334, citing *Brookhart v. Janis,* 384 U. S. 1, *Johnson v. Zerbst, supra,* and *Wayne v. State,* 4 Md. App. 424.

Collins was not present when Sullivan's deposition was taken. The question is whether he effectively waived his right to be present.

On 11 July 1969, a Friday, at 1700 hours, on motion by the State, the Circuit Court for Anne Arundel County by E. Mackall Childs, J., ordered that the deposition of Sullivan be taken upon oral examination at the North Arundel Hospital at 4:00 P.M. on 14 July before William R. Gore, Notary Public, to continue from day to day until completed, "provided that service of a copy of the aforegoing Motion and this Order be made by the Sheriff of Anne Arundel County upon John S. Collins, 128 Cedar Road, Severna Park, Maryland and his attorney of record, Alan H. Murrell, home address of 5102 Brook Green Road, Baltimore, Maryland and a business address of Suite 1220 Fidelity Building, Charles and Lexington Streets, Baltimore, Maryland 21201 on or before Sunday, July 13, 1969 at 4:00 P.M." On 14 July the State filed an amended Motion in which was set out that Mr. Murrell was served, "however, the defendant, John S. Collins was not served, therefore, the Deposition ordered for July 14, 1969 was not held." The State moved that the deposition be taken at 1:00 P.M. on 19 July, a Saturday. On this Motion the court, George Sachse, J., on 14 July ordered the taking of the deposition as requested "provided that a copy of the aforegoing amended Motion and this Order be mailed to the defendant, John S. Collins,

at his home address listed on the bond filed in this Court being 128 Cedar Road, Severna Park, Maryland and to the defendant's attorney of record Alan H. Murrell, 1220 Fidelity Building, Charles and Lexington Streets, Baltimore, Maryland 21201 on July 14, 1969." The State's Attorney certified that the amended motion and order thereon were mailed to Collins and to his attorney on 14 July. On Friday July 18 at 9:13 A.M. Collins, by his attorney, filed a motion to quash the order of 14 July. It alleged that he stood indicted and had filed various motions pertaining to the indictments, including discovery and particulars; that no specific trial date had been scheduled by the State; that the order of 11 July had not been served on Collins "due to his absence from the State of Maryland" and his attorney had been served at 4:00 P.M. on Sunday 13 July at his home; that the order of 14 July was received in counsel's office at 9:30 A.M. on 15 July, postmarked 14 July at 1:00 P.M.; that while the motion to take Sullivan's deposition alleged that Sullivan's demise was imminent but that he was lucid and capable of giving testimony, although "receiving oxygen and suffering from the agony of terminal cancer," it did not contain "any reference to either the legal basis or the authenticity of the allegations concerning the alleged physical and mental condition of Sullivan;" that the right of Collins to be present at the taking of the deposition "means, among other things, the right to challenge the qualifications of the witness and, specifically, his actual competency before the witness is sworn." Collins prayed the court to quash the motion and order of 14 July; to postpone the deposition until such time as Sullivan's actual competency as a witness was determined by the court; to order Sullivan to be examined by two physicians to determine his competency to testify; and to grant a formal hearing "wherein testimony can be taken and evidence received concerning the actual mental and physical status of David L. Sullivan and his competency as a witness." The docket entries

read that on the same day the motion to quash was filed an "order of court thereto" was filed. It read, over the signature of George Sachse, J.:

> "This matter coming before the Court in Chambers pertaining to the question of Motion to Quash Order to Take Deposition.
>
> Attorneys representing the Defendant, John S. Collins, in these proceedings, insisted that the relief prayed in said Petition be granted as therein set out.
>
> It was the opinion of this Court that the relief to be granted at this time is that David L. Sullivan, the person whose deposition is sought to be taken, may be examined by two physicians to determine his competency to testify in such deposition at the time it is taken as a witness in these proceedings.
>
> THEREFORE, IT IS, on this 18th day of July, 1969, by the Circuit Court for Anne Arundel County, in Criminals, ORDERED:
>
> That David L. Sullivan be examined by two physicians to determine his competency to testify at the time of the taking of his testimony in the form of a deposition."

The next entry on the docket of the Circuit Court for Anne Arundel County was July 29, 1969: "Deposition of David L. Sullivan fld," and the only other entry following was that of 18 August 1969 reflecting that the case as to Collins was ordered to be removed to the Circuit Court for Washington County. There is no transcription of the proceedings held in the chambers of Judge Sachse.

When the indictments came on for trial in the Circuit Court for Washington County on 22 June 1970 they were consolidated without objection by Collins. He was then arraigned, pleaded not guilty, waived his right to trial by jury and prayed a trial by the court. The State intro-

duced into evidence the motion of 11 July 1969 and the amended motion of 14 July and the orders thereon and the certificate of the death of David L. Sullivan. The State next offered the deposition of Sullivan. Collins moved to quash, strike and exclude it as in violation of his rights under Art. 21 of the Maryland Declaration of Rights and the Sixth and Fourteenth Amendments to the Constitution of the United States. The court held an evidentiary hearing on the issue.

Collins testified that prior to 11 July 1969 he had received no information from the State's Attorney's Office of Anne Arundel County with respect to the taking of the deposition of Sullivan; that as of 11 July Alan H. Murrell, Esq. was his attorney of record; that he had not received any notice nor did he have any knowledge of the taking of the deposition scheduled for 14 July; that neither prior to or on 19 July had he received any notice nor did he have any knowledge of the taking of the deposition on 19 July; and that he first had knowledge of the taking of the deposition on 19 July the next day, 20 July, when he found the notice in his mail on his return home. He had left home in the early afternoon of Friday, 11 July, to visit his uncle in Falls Church, Virginia, driving to Friendship Airport and flying his plane to Virginia Airport several blocks from the home of his uncle. He arrived at his uncle's home about 5:00 – 5:30 P.M. On Monday, 14 July, he was in Rehobeth Beach, Delaware, having flown there in his plane and was joined there by his wife, daughter and sister-in-law. He had not been in contact with his lawyer between the time he left home on 11 July and the time he arrived at Rehobeth Beach. He returned home on Sunday, 20 July, arriving about midday. Between the time he left home on 11 July and the time he arrived back home on 20 July he had not received any notice nor had any knowledge of the proposed taking of the deposition on 14 July or 19 July. It was when he arrived home on 20 July that he found the notice in an envelope postmarked July 14,

1969, 1:00 P.M. After he read it he immediately attempted to contact Mr. Murrell by telephone. He finally reached Mr. Murrell early Monday morning. He asserted that he had not left home on 11 July "with any idea of avoiding any particular process that might be issued" against him. "I had no idea there was any process being issued; as far as I knew, there was none out." He said that had he received the summons referred to in the order of 11 July or the written notice of 14 July he would have appeared to be confronted by Sullivan—"I'd certainly want to be present." He stated that between 11 July and 21 July 1969 he had never talked to his attorney "relative to [their] relationship as a lawyer-client concerning this case." On cross-examination it was elicited that he had not talked to his lawyer at all between 11 and 21 July; that his office did not know where he was, as he told his secretary only that he would be out of town and that he had not called his secretary while he was away. He knew that Sullivan was in the hospital but did not know his condition; "I tried to find out, but was unable to find out." Asked if he knew that the State was going to take Sullivan's deposition, he replied: "No, sir; not at all; as a matter of fact I had understood that you didn't intend to take deposition. That's what I had understood." The State made no effort to ascertain how Collins reached this understanding. Upon question by the court Collins said his attorney had not consulted him about the motion to quash the order of 18 July to depose Sullivan; "I presume he did it in my best interests without my authorization." And upon further inquiry by the court it was elicited that after Collins had learned that Sullivan's deposition had been taken, he made no request to examine Sullivan further and he did not know whether he had time to examine Sullivan before Sullivan died—"I have never really known what his condition was * * *." Collins offered no other testimony on his motion.

On behalf of the State, evidence was received by stipu-

lation that the notice of the deposition was properly mailed to Collins on 14 July 1969. A police officer testified that his attempts to locate Collins on 15 and 16 July, by visits to Collins' home and law office and by several telephone calls to his law office after 16 July, to serve him with the order to take the deposition, were unsuccessful. The State adduced from each of three physicians, a surgeon, an internist and one who had internship in anesthesia; general surgery and pathology, who had examined Sullivan shortly before he was deposed, that it was his opinion that Sullivan was competent to testify. At this point the court heard argument on the motion. The arguments were not transcribed. The transcript reads simply: "Court ruled that the State's Attorney was right and overruled the Motion to Quash." Subsequently at the trial on the merits the deposition was offered by the State and received in evidence over objection. Rule 413 b; Rule 727 f.

Collins' testimony that he had no knowledge whatsoever regarding the deposing of Sullivan until after the deposition had been taken was not contradicted, refuted or disputed. There was no direct evidence, nor was there a rational inference from any evidence adduced, that Collins had evaded service of any order or had avoided receipt of any notice. There was nothing to show that he had not simply gone away as he stated, with no knowledge of the actual condition of Sullivan and with the understanding, not shown to be unreasonable, that the State did not plan to take Sullivan's deposition in any event. On the evidence there is no reason within the frame of reference of the taking of Sullivan's deposition, why Collins' actions were in anyway improper or why he was not perfectly free to do exactly what he did. Patently, it was not established within the requirement of *Johnson. v. Zerbst, supra,* that Collins intentionally relinquished or abandoned his right to be present at the taking of the deposition of Sullivan. Absent such waiver, the taking of the deposition in his absence in the circum-

stances [7] violated his right to be present at a stage of the trial and his right to be confronted with Sullivan, who was a witness against him, as guaranteed by the federal and State constitutions. Since the deposition was taken in violation of Collins' constitutional rights, its admission in evidence over his objection was error. Since Sullivan was the primary witness for the State, his testimony being essential, as the evidence was developed, to prove the charges against Collins, the error cannot be said to be harmless beyond a reasonable doubt, the test applicable in the determination of whether or not an error is prejudicial when it is of constitutional dimension. *Chapman v. California,* 386 U. S. 18; *Johnson v. State,* 9 Md. App. 436, 438. Therefore the judgments must be set aside. We reverse them.

Collins assigns other errors with respect to the taking of the deposition, specifically as to its submission to the witness after it was fully transcribed, Rule 411 a 1; corrections made therein, Rule 411 a 2; its signing by the witness, Rule 411 a 3; its filing, Rule 411 b 2; the notice of its filing, Rule 411 b 4. We need not decide these matters in view of our holding. Nor do we reach the question presented by him on the sufficiency of the evidence.

> *Judgments reversed; case remanded for a new trial; costs to be paid by the County Council of Anne Arundel County.*

---

7. Rule 727 c provides that "[t]he party at whose instance a deposition is to be taken shall give to every other party reasonable written notice of the time and place for taking the deposition." If through no fault of the party to whom the notice is directed it is not received, the fact that it was mailed would not abrogate the necessity of an affirmative showing that the party intentionally relinquished or abandoned the right known to him, to be present at the taking of the deposition. In such circumstance whether or not the notice was properly mailed, the party could not, in any event, intentionally relinquish the right to be present at the taking of a deposition of which he in fact had no knowledge.