JOHN HENRY HALEY v. STATE
OF MARYLAND

[No. 1081, September Term, 1977.]

*Decided October 11, 1978.*

The cause was argued before GILBERT, C. J., and
THOMPSON and LISS, JJ.

*Owen M. Taylor, Assigned Public Defender,* with whom
was *David L. Prestemon* on the brief, for appellant.

*Ray E. Stokes, Assistant Attorney General,* with whom
were *Francis Bill Burch, Attorney General, Andrew L.*

*Sonner, State's Attorney for Montgomery County,* and *Irma S. Raker, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

John Henry Haley, the appellant, was convicted in a jury trial, in the Circuit Court for Montgomery County, on various counts of armed robbery, assault and battery, the use of a handgun in the commission of a felony, and unlawfully carrying a handgun. A sentence of twenty years was imposed on the armed robbery conviction together with concurrent lesser sentences on the other convictions. Thereafter, appellant noted this appeal and has raised the following issues for our determination.

I.   Whether the trial court erred by conducting a portion of the *voir dire* examination at a bench conference while the appellant remained at the counsel table.

II.  Whether the trial court erred in refusing to ask certain questions during examination of the prospective jury panel on *voir dire.*

III. Whether the trial court erred by completing the trial when the appellant failed to appear on the second day of trial.

## I. The Exclusion of Appellant from Bench Conferences at Which a Portion of the *Voir Dire* was Conducted

During the course of the examination of the prospective jurors on *voir dire,* several bench conferences took place at which the court examined individual veniremen in the presence of counsel while the defendant apparently remained at the counsel table. Eleven prospective jurors were so examined, with three being excused for cause by the court. Six were later challenged by the State and two by the defendant during the peremptory challenge phase of the jury selection. Accordingly, none of the persons examined at the

various bench conferences actually served on the jury which convicted appellant.

Appellant cites Maryland Rule 724 a[1] and *Bunch v. State,* 281 Md. 680, 381 A. 2d 1142 (1978) to support his argument that the absence of the appellant from those bench conferences violated his right to be present at every stage of his trial. To sustain this contention it must be shown (a) that the bench conferences were stages of the trial at which appellant had a right to be present, (b) that the appellant was not, in fact, present, and (c) that the appellant did not waive his right to be present.

## A. The Bench Conferences as a Stage of the Trial

Maryland Rule 724 a states:

> "The defendant shall be present at every stage of the trial, including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as provided by these Rules."

The phrase "impaneling the jury" as used in Rule 724, and formerly in Rule 775, must be taken to include more than simply the swearing of the twelve individuals who are to try the case. It is, of course, fundamental to the right of trial by a jury that the members of that body be impartial and unbiased. The purpose of examination on *voir dire* is to help meet this basic tenet of a jury trial by separating from the panel those prospective jurors who cannot render a fair and impartial verdict based solely upon the law and the evidence. Accordingly, the *voir dire* examination is perhaps the most important step in the selection of a jury. Unless the phrase "impaneling the jury," as used in Rule 724, includes the *voir dire* examination the right of the defendant to be present, which that Rule guarantees, is empty and useless. It is only during such steps of jury selection as the *voir dire* and peremptory challenges that the defendant's presence has any substantial meaning, for only then is he able to participate in the selection of the men and women who will try his case.

---

1. Former Rule 775, in effect at the time of the trial, is controlling but for purposes of this case there is no substantial difference between the two rules.

Several cases have recognized either explicitly or implicitly that the process of culling out possibly biased prospective jurors is part and parcel of the process of impaneling a jury. Most recently, in *Bunch v. State, supra,* the Court of Appeals held that a bench conference concerned with the possible prejudice of a juror and conducted after the trial had commenced, but in the absence of the defendant, violated the defendant's right to be present at every stage of his trial. While the case is not factually identical to the one here under consideration, the Court provided guidance for the resolution of the present question:

> "Long ago the Supreme Court held that proceedings during the impaneling of the jury, and involving challenges to prospective jurors on the ground of bias, constituted a stage of the trial at which the defendant had a right to be personally present, *Hopt v. Utah,* 110 U. S. 574, 4 S. Ct. 202, 28 L. Ed. 262 (1884). Mr. Justice Harlan for the Court there explained, in language fully applicable to any proceeding involving a question of who should be on the jury (110 U. S. at 578):
>
>> 'The prisoner is entitled to an impartial jury composed of persons not disqualified . . . , and his life or liberty may depend upon the aid which, by his personal presence, he may give to counsel and to the court . . . in the selection of jurors. The necessities of the defense may not be met by the presence of his counsel only. For every purpose, therefore, involved in the requirement that the defendant shall be personally present at the trial, . . . the trial commences at least from the time when the work of impaneling the jury begins.'
>
> "The holding in *Hopt* was reiterated by the Court a few years later in *Lewis v. United States,* 146 U. S. 370, 13 S. Ct. 136, 36 L. Ed. 1011 (1892).

"The provision in Maryland Rule 724, and its predecessor Rule 775, specifically including the impaneling of the jury as a stage of the trial at which the defendant's presence is required, embodies the holding of the Supreme Court in *Hopt v. Utah, supra,* and *Lewis v. United States, supra.* The reason for the provision, as set forth by the Supreme Court in *Hopt,* is that the defendant, being entitled to an impartial jury, may give aid to his counsel and the court in the selection of who should be on the jury." 281 Md. at 686-87. (Footnote omitted).

*See also, Impaneling or Selection of Jury in Accused's Absence,* 26 A.L.R.2d 762 (1952).

There can be no doubt, therefore, that examination of prospective jurors on their *voir dire* is a stage of the trial at which the defendant has a right to be present. The bench conferences here in question were clearly a significant part of the *voir dire* examination. They were conducted for the purpose of further, semi-confidential, questioning of prospective jurors on the issue of whether those so questioned would be able to return a fair and impartial verdict. Consequently, those conferences did constitute a stage of the trial at which the appellant was entitled to be present by virtue of Rule 724.

We recognize that a criminal defendant does not have the right to be present at every bench or chambers conference that may be conducted during the course of the trial. There are occasions when such conferences constitute not a stage of the trial but rather a suspension of the trial while the court takes up collateral matters or questions of law which must be resolved before the case can continue. *See, e.g., Brown v. State,* 272 Md. 450, 325 A. 2d 557 (1974) (chambers and bench conferences concerning the admissibility of evidence and the violation of a sequestration order held not material stages of the trial); *Veney v. Warden,* 259 Md. 437, 271 A. 2d 133 (1970) (discussion in chambers of proposed procedures concerning sequestration of the jury); *Martin v. State,* 228 Md. 311, 179 A. 2d 865 (1962) (chambers hearing on motion for judgment

of acquittal); *Brown v. State,* 225 Md. 349, 170 A. 2d 300 (1961), *cert. denied,* 372 U. S. 960 (1963) (proposed jury instructions and arguments relating thereto considered by judge and counsel in chambers); *Sewell v. State,* 34 Md. App. 691, 368 A. 2d 1111 (1977) (conference concerning disclosure of informant); *State v. Tumminello,* 16 Md. App. 421, 298 A. 2d 202 (1972) (conferences on the admissibility of evidence). A bench conference at which the court actually conducts a portion of the *voir dire,* however, does not fall within the category of a collateral matter. It is an integral and substantial part of the process of impaneling the jury and, therefore, of the trial itself. A defendant, facing the possibility of a criminal conviction, ought to be able to participate in the selection of those who will determine his guilt or innocence. Rule 724 guarantees him the right to do so.

The State argues only that under *Hunt v. State,* 12 Md. App. 286, 278 A. 2d 637, *cert. denied,* 263 Md. 715 (1971), *voir dire* examination is not a part of the trial. To the extent that *Hunt v. State* can be said to support such a ruling it was overruled by *Bunch v. State, supra. See also, Redman v. State,* 26 Md. App. 241, 337 A. 2d 441 (1975) and *State v. McKenzie,* 17 Md. App. 563, 303 A. 2d 406 (1973).

B. The Presence of the Appellant

Although the appellant was present in the courtroom when the subject bench conferences took place, the record does not show whether or not he was present at the bench during those discussions. We cannot and do not presume he was present from a silent record, but we can and do require, as a matter of state procedure, that the complete facts be brought out in post conviction procedures. We followed this procedure in *Green v. State,* 23 Md. App. 680, 683, 329 A. 2d 731 (1974), *cert. denied,* 274 Md. 728 (1975). *Compare Bunch v. State, supra,* and *Redman v. State, supra,* where the records on direct appeal were clear that the accused was not present at critical times. *See also, State v. Zimmerman,* 261 Md. 11, 273 A. 2d 156 (1971).

## C. Waiver

The right of a criminal defendant to be present at every critical stage of his trial is personal to the defendant and cannot be waived by counsel. *Bunch v. State, supra; Brown v. State, supra; Midgett v. State,* 216 Md. 26, 139 A. 2d 209 (1958). The record does not indicate whether or not the appellant waived his rights under Rule 724. This, too, can be determined in post conviction procedures as set out above, if it is first determined that appellant was not present at the bench conferences.

## II. The Omitted *Voir Dire* Questions

Appellant submitted the following questions, among others, to the court for the purpose of having them asked during examination of the prospective jurors on *voir dire.*

"10. Is there any member of the prospective jury panel who has ever been the victim of a crime?

"11. Does any member of the prospective jury panel have a relative or a close personal friend who has been the victim of a crime?

"12. Does any member of the prospective jury panel know anyone personally who has been the victim of a robbery?"

The trial judge declined to ask the questions as thus submitted but, instead, made the following inquiry:

"Is there any member of the prospective panel, or any member of your immediate family, who has ever been a victim of a crime? That's the first part, and as a result of that experience, either of yourself or a member of your family, it would be difficult or impossible for you to render a fair and impartial verdict in this case? Now, ladies and gentlemen, stand or raise your hand only if your answer is yes to both parts, that you or a member of your family has been a victim of a crime and by reason of such prior experience you believe it may be difficult for

you to render a fair and impartial verdict in this case. . . ."

* * *

"Does any member of the prospective jury panel have such opinion or belief concerning the crime of robbery, or concerning the use of handguns in criminal offenses of any kind, as would make it difficult or impossible for him to render a fair and impartial verdict in a case such as this and involving these allegations?"

Defense counsel took exception to the modification and requested that the original questions numbered 10, 11, and 12, as quoted above, be put to the prospective jurors. This request was denied.

Appellant contends that the effect of the court's refusal to ask the above questions "was to deny the defense information concerning the experiences of jurors which might affect their attitudes towards the pending case," thereby denying him the opportunity to make full use of his peremptory challenges.

The following passage from *Couser v. State,* 282 Md. 125, 138-39, 383 A. 2d 389 (1978) disposes of this question:

"The constitutional right to an impartial jury is basically protected by questioning on voir dire examination aimed at exposing the existence of cause for disqualification and the law of this State accordingly so limits the scope of the information which may be obtained as a matter of right; it does not encompass asking questions designed to elicit information in aid of deciding on peremptory challenges. *Mason v. State,* 242 Md. 707, 218 A. 2d 682 (1966); *McGee v. State,* 219 Md. 53, 146 A. 2d 194 (1959); *Curtis v. State,* 4 Md. App. 499, 243 A. 2d 656 (1968)."

### III. Appellant's Failure to Appear on the Second Day of Trial

The trial of this case commenced on November 30, 1976. At the conclusion of the presentation of evidence on that day the

court excused the jury until the following morning. After the jurors had left the courtroom the court then raised *sua sponte* the matter of the appropriateness of the appellant's bond. The court made the following observations before hearing from counsel on the matter: the defendant had been late for his appearance on the date originally set for the start of the trial (November 29); he had been late on the day the trial actually began (i.e., November 30, 1976); the defendant resided in the District of Columbia and did not have a telephone at his residence; defense counsel had filed a motion to strike his appearance based on the defendant's failure to cooperate in the preparation of the case; and the evidence so far presented "had ... changed the posture of the case." The evidence referred to by the court was extremely damaging to appellant and included an in-court identification of the appellant as the perpetrator of the crimes charged.

Defense counsel attempted to minimize the appellant's previous tardiness, citing extenuating circumstances such as the weather and appellant's lack of familiarity with the jurisdiction in which he was being tried, and pointed out that appellant had been in court when prior motions were being heard even though his presence then was not required. Counsel also stated that he had a telephone number through which appellant could be reached and this was confirmed by the appellant himself. There was some indication that the appellant might have been due for trial the next day in the District of Columbia but this was never made certain one way or another.

The court initially determined to increase the amount of the appellant's recognizance by imposing a twenty per cent cash bond as opposed to the previous ten per cent. The court recanted, however, after further argument by defense counsel and, instead of increasing the recognizance, issued a stern and explicit warning to the appellant that he must appear on time the following morning and that if he failed to do so the trial would continue without him. Further, the trial judge instructed appellant that if he appeared to be detained in the District of Columbia court, to inform that court that he was in trial in Montgomery County and that if the judge

in the District of Columbia had any questions he should telephone the trial judge directly.

At 9:30 a.m. on December 1, the appellant failed to appear as scheduled. Thereupon the following discussion took place between the court and defense counsel:

"The Court: Mr. Bours, is your client here?

Mr. Bours: I am afraid I have to report he is not, Your Honor.

I would like to ask for a brief recess to confer with the State about a couple of matters before we proceed.

The Court: I had bad feelings about your client last night, Mr. Bours.

All right, we will take a few minutes for you to talk to the State. Tell me what attempt you made to get in touch with your client. When did you last see your client last evening?

Mr. Bours: After we left the court room we went to my office and he and his wife were there until about 8:30, perhaps a little later than that. We also called the attorney who was representing him in the proceedings in the District of Columbia. This morning we reached him and took care of that and gave him all of the information on this case.

The Court: Did he understand that his client was to come here and not there?

Mr. Bours: Yes, and he also had your name and telephone number at the court house.

The Court: Was he scheduled for the Superior Court or the District Court?

Mr. Bours: I cannot say that I am certain that it was the Superior Court. But we talked for quite some time about the case and I quite frankly expected the defendant to be here.

The Court: What time did you tell him to be here this morning?

Mr. Bours: 8:45.

The Court: It is now 10:07. Have you made a call to the number that you have down?

Mr. Bours: I left my telephone number in the court room. I did not want to disrupt the proceedings."

The court then instructed the Assistant State's Attorney to undertake an investigation as to the appellant's whereabouts and a short recess was taken.

The court reconvened at 11:02 a.m. at which time it inquired whether the appellant had been located. Defense counsel stated that his efforts to contact the appellant through two different telephone numbers, which the appellant had furnished, were unsuccessful. He further reported that his office had received no calls from the appellant and that an inquiry to the District of Columbia jail also had proven fruitless.

The State then called upon one Detective Howell to relate the efforts made by it to locate the appellant:

"Detective Howell: I talked to Mr. Johnson, an employee for D.C. Police Department, and they have a teletype system which shows all records of any injured subjects being transported by the D.C. Police Department or by any ambulance service; and as of 9:00 p.m. last night until 10:34 a.m. this morning, they have no record of a John Henry Haley being transported by D.C. Police or ambulance service.

I also had conversation with Miss McBride who is the receptionist at the Admitting Office of Howard University Hospital in D.C.[2]

She advises that since 9:00 p.m. and to 10:40 a.m. this morning, no one by the name of John Henry Haley has received any emergency treatment or has been admitted.

I also talked with Detective/Sergeant Robert of the Fourth Precinct of the District Police

2. The record shows that at sometime previous to his trial the appellant may have been a patient at Freedman's Hospital of Howard University in the District of Columbia. It was also proffered that he left the hospital without authorization.

Department, Metropolitan Police, and as of 10:54 a.m., he has not received any reply from his uniformed officers who are responding to 810 Otis Street, Northeast and also 911 Monroe Street.

Mr. Bours: I don't have 810 O Street, Southeast.

Detective Howell: Excuse me?

Mr. Raker: 911 Monroe Street

Mr. Bours: Are you certain you said Northeast?

Detective Howell: Yes. He advised he would be a few more minutes before he gets reply from his uniformed officer, correct.

Your Honor, that is Third District, not Fourth.

The Court: All right, thank you.

Detective Howell: Yes, sir."

Thereafter, the court forfeited the appellant's bond and proceeded with the trial to its conclusion, denying defense counsel's motion for a mistrial based on the absence of the defendant.

On June 6, 1977, the appellant was sentenced by Judge McAuliffe. At that hearing it was revealed that the appellant had been apprehended in the District of Columbia on December 13 or 15, 1976, two weeks after his failure to appear for the concluding day of his trial. During its remarks the court twice referred to the appellant's failure to appear on December 1, 1976. After the sentences were imposed defense counsel then took up the matter of the forfeiture of the bond. At no point in any of the proceedings was any explanation offered concerning the appellant's absence on the second day of his trial.

Maryland Rule 724 c provides: "A defendant initially at trial waives his right to be present when: 1. He voluntarily absents himself after the trial has commenced, whether or not he has been informed by the court of his right to remain during trial; . . . ."

Appellant cites *Collins v. State,* 12 Md. App. 239, 278 A. 2d 311 (1971), *aff'd.,State v. Collins,* 265 Md. 70, 288 A. 2d 163 (1972) for the proposition that a waiver of the right to be

present at every stage of the trial may not be presumed and that every reasonable presumption against waiver must be indulged. It is true, as appellant contends, that voluntary absence must be clearly established and will not be presumed from a silent record. *State v. Collins, supra.* Here, however, there is ample support in the record for the conclusion that appellant's absence on December 1, 1976 was voluntary. The court was not required to discover appellant's actual whereabouts before concluding that his absence was voluntary. After making reasonable efforts to assure itself that appellant had not been arrested or hospitalized in the District of Columbia and after learning that he had not contacted either the court or his attorney concerning his whereabouts and that defense counsel had been unable to reach the appellant, the court was justified in concluding that appellant's failure to appear was voluntary. This conclusion was further confirmed by the appellant's lack of any explanation for his absence when he next appeared before the court for sentencing. Finally, the transcript of the sentencing hearing shows that appellant was arrested on either December 13 or December 15 of 1976. There is no indication that in the two week period between the final day of his trial and the date of his arrest he made any effort to either contact the court or his attorney to explain his disappearance. Under these circumstances we must conclude that the record shows with sufficient clarity that the appellant's absence was voluntary.

Federal Rule of Criminal Procedure 43 is the federal counterpart to Md. Rule 724. Several decisions by the federal courts under F.R. Crim. Procedure 43 lend support to our conclusion. Annot., 21 A.L.R. Fed. 906 (1974).

In *Gaither v. United States,* 413 F. 2d 1061 (D.C. Cir. 1969), the Court mentioned four specific circumstances which led it to conclude "with fair certainty" that the accused had voluntarily absented himself on the last day of his trial. He had been late the day before and the trial judge issued a strong warning to him to be present the next morning or face revocation of bail; his counsel did not object to continuation of the trial thus indicating, the court felt, that counsel

regarded the defendant's absence to be voluntary; he was not taken into custody until three weeks after the end of his trial; and, finally, no explanation of his absence was ever given. In the instant case appellant's trial counsel did object to the continuance of the trial in appellant's absence but we do not think this circumstance prevented a finding that appellant's absence was voluntary in light of the other circumstances bearing on the question.

*United States v. Cureton,* 302 F. Supp. 1065 (D. D.C. 1968) *aff'd.,* 413 F. 2d 418 (D.C. Cir. 1969) is another case in which facts similar to the instant case justified a finding that the accused's absence was voluntary. It was found that the trial had commenced on a Thursday with the impaneling of the jury and then was recessed until the following Monday. Defense counsel told his client to be in court on Monday and cautioned him to make daily reports to a police precinct station in accordance with the conditions of his release. On Monday the accused failed to appear and a search of the courthouse failed to locate him. Defense counsel made two telephone calls and reported to the court that he had no knowledge of the accused's whereabouts and that he had failed to report to the police precinct station as required. Defense counsel objected to continuing the trial without the accused but the trial court found his absence to be voluntary and concluded the trial. The court also pointed out that the accused failed to contact his attorney prior to his rearrest or to give a satisfactory explanation of his failure to report to the police precinct station. It was held that the accused had absented himself voluntarily and this finding was affirmed on appeal. To the same effect see *United States v. Garcia-Turino,* 458 F. 2d 1345 (9th Cir.), *cert. denied,* 409 U. S. 951 (1972) and *United States v. Partlow,* 428 F. 2d 814 (2d. Cir. 1970).

The holdings in these and other cases cited in 21 A.L.R. Fed. *supra* at 921-24, make it clear that a trial court should make reasonable efforts to determine the reason for an accused's absence after trial has commenced. There is no requirement that the court or the state actually locate the party or discover the reason for his absence.

To impose such a requirement would permit a criminal to frustrate the process of justice simply by making himself unavailable. Moreover, when such an accused is finally brought back before the court, as was the appellant in this case, and fails to raise the question of the voluntariness of his absence, let alone offer any explanation, the unmistakable inference is that his absence was in fact voluntary.

*Judgments affirmed.*
*Appellant to pay the costs.*