## ROBERSON *v.* STATE

[No. 157, September Term, 1960.]

*Decided February 15, 1961.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and MARBURY, JJ.

*William Carruth* for the appellant.

*Mary Arabian, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, Saul A. Harris, State's Attorney for Baltimore City,* and *E. Thomas Maxwell, Jr., Assistant State's Attorney,* on the brief, for the appellee.

PER CURIAM.

In this appeal, the appellant poses five questions, which collectively amount to a challenge of the sufficiency of the evidence to support a finding of the trial court that he was guilty of murder in the first degree. He concedes that a second degree murder verdict against him would have been appropriate, but claims the State failed to show that the killing was wilful, deliberate and premeditated.

The facts, briefly summarized, were as follows: The appellant and one Shirley Forbes, although unmarried, had been living together for some nine months. During this period, she had occasionally dated Thomas Taylor, the deceased. When Roberson learned of this, he protested to Shirley and she agreed to stop seeing Taylor. However, about two weeks before the homicide, Shirley was sitting on the steps of her grandmother's house (or next door), talking with Taylor and two girls. Roberson approached and saw Taylor leaning over Shirley and demanded to know what he was doing. Hearing the dispute, Shirley's grandmother came to the door to see what was wrong. As Roberson started into the house, he said to Taylor, "If you ever cross my path again, I will kill you."

On September 11, 1959, the day before the killing, Shirley and Roberson had a quarrel and "broke up." Early the next morning, she went to live with her mother. That same evening, she was sitting on her mother's front steps when Taylor arrived. They were soon joined by Roberson, and these three, together with the other occupants of the mother's home, had some drinks.

When their whiskey gave out, Shirley and Taylor went to obtain more. Roberson followed them to the bar, asked Shirley what she was doing with Taylor, and tried to get

her to return to the home where they had been living together. Shirley's mother arrived, and, after some conversation, she, Shirley and Taylor returned to the mother's home. In two or three minutes, Roberson also returned. The drinking continued. Taylor gave Shirley twelve cents for her piggy bank. Roberson saw this and got a glass of whiskey, which he poured on Shirley. He drew his foot back as if to kick her, and she ran across the street. He pursued her and said that if she did not return the money, he would start trouble between him and Taylor. She returned it.

Shortly thereafter, Shirley was upstairs making up her bed, in which she intended to spend the night. Taylor walked in, and she and Taylor were talking. Roberson walked into the room, cursed Taylor and struck him in the face with his fist. Shirley screamed and everyone ran to the bedroom. Roberson was taken outside the house, where he yelled to Taylor to "come out and fight like a man," that he was "going to get" Taylor. Taylor replied, "I don't want to fight you. You want me, I don't want you." Roberson tried to re-enter the house, but was prevented by another man. Taylor went to the door and again told Roberson he did not want to fight. Roberson ran up the steps and stabbed Taylor in the neck with a knife, exclaiming that he had told him he was going to get him. Taylor collapsed and died as a result of the stabbing.

Roberson testified that he was clear-headed and realized everything he was doing on the evening of the homicide, and that Taylor, who had a knife in his hand, kept it down at his side, made no threats at the time of the stabbing, made no attempt to attack Roberson, and made no effort to defend himself. He estimated that there was a lapse of some five minutes between the time he left the bedroom and the time when he went out to the street, and about a minute to a minute and a half between the time Taylor came to the door and the time of the stabbing. He spent the night with a friend, and then went to Alabama, where he was later apprehended.

As we recently said in *Lee v. State,* 224 Md. 260, the facts, as stated above, are so obviously sufficient to support a finding by the trial court of murder in the first degree that we deem

it unnecessary further to elaborate upon them, or to discuss the law as it relates to first degree murder, as we have so recently and repeatedly had occasion to pass upon the sufficiency of the evidence to support a first degree verdict. See the cases cited in the *Lee* case.

*Judgment affirmed.*