## MARTIN, Etc. *v.* STATE

[No. 231, September Term, 1961.]

312

Decided *April 13, 1962.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HORNEY, MARBURY and SYBERT, JJ.

*Henry C. Engel, Jr.,* with whom was *G. Howlett Cobourn,* on the brief, for appellant.

*Thomas W. Jamison, III, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Harry E. Dyer, Jr.,* and *Edward H. W. Harlan, State's Attorney* and *Assistant State's Attorney,* respectively, for *Harford County,* on the brief, for appellee.

MARBURY, J., delivered the opinion of the Court.

On January 16, 1961, the appellant, Lewis Carroll Martin, alias Louis Carroll Martin, became involved in an altercation with James Edward Timms, which resulted in the fatal stabbing of Timms in the upper chest by appellant. He was subsequently tried on a criminal information, convicted by a jury of first degree murder, without capital punishment, and sentenced to life imprisonment in the penitentiary. From the judgment entered upon the jury's verdict he appeals, assigning four grounds for reversal: 1, that the evidence was insufficient to warrant a conviction of murder in the first degree; 2, that he was intoxicated to such a degree as to be in-

capable of deliberation and premeditation in the formation of a willful intent; 3, that the failure to have the appellant present in chambers during the argument on the motion for a directed verdict at the close of the State's case and on the motion for a directed verdict at the close of the appellant's case, was a violation of the appellant's rights under Article 5 of the Maryland Declaration of Rights; 4, that a memorandum setting forth purported conclusions of law and fact submitted to the court and to the office of the State's Attorney, without the knowledge or consent of the appellant or appellant's counsel, prior to the motion for a new trial, by a former court reporter, who was present for only a portion of the proceedings in the case, constituted unwarranted interference with the due process of law and was prejudicial to the appellants rights in the case.

There was evidence showing that the appellant until about two weeks before the tragedy, had lived illicitly with Mrs. Carolyn Wall in a squalid trailer on Agreement Laneway in Harford County, Maryland. Adjacent to the trailer was a shack occupied by Elmer Martin, the appellant's father, and James Edward Timms, the deceased. During the afternoon of that date Timms, Mrs. Wall, and a man named Patterson, who apparently was a visitor, in the course of three trips to Aberdeen and Baltimore County, acquired approximately eighteen cans of beer and four to six quarts of wine which, exclusive of the portion of the beverages consumed in transit, were brought back to the shack occupied by Elmer Martin and the deceased, where the beer and wine was drunk by them, the appellant, and his father. The appellant did not accompany them on the first two trips, but did on the third trip to Aberdeen. The drinking activities of the group extended from approximately 4:30 in the afternoon until shortly prior to 10 P. M. that evening. During this period of time Patterson became intoxicated to the point of having to be helped to a bed in the back room, where he slept through most of the evening, and did not see the affray. There was testimony that Mrs. Wall became "pretty high"; that the appellant said that if he sat down he would not be able to get out of the chair; that Elmer Martin was "pretty well filled up on wine and beer";

and that the alcoholic content of Timms' blood was .13 per cent, as disclosed by the pathologist's examination.

The difficulties arose when all parties involved were in the kitchen of the shack and Elmer Martin said something to Mrs. Wall about getting out of the house. This led to an argument between Elmer and Timms, which resulted in Mrs. Wall leaving the shack, and Timms hitting Elmer with his fist. Elmer did not return the blow. Timms then struck the appellant with his fist and the appellant hit him. The appellant picked up a small hunting-type knife from behind the kitchen stove and Timms ran outside, with the appellant in pursuit. He caught Timms in front of the shack where he inflicted the fatal wound in the chest. After killing Timms the appellant left the shack and went to a barn, where he was arrested the following day by a State trooper.

Emily Timms, the mother of the victim, who also lived on Agreement Laneway nearby, testified that after hearing what sounded to her like bottles being thrown in the shack occupied by her son, the deceased, and Elmer Martin, she went to investigate and saw the appellant shortly after the stabbing, when he "didn't seem to be too drunk." There was testimony by the State trooper who investigated the homicide to the effect that the tracks left in the snow by the appellant after the killing were wide apart and did not indicate that they were made by a person who was staggering.

Appellant claimed he was sleeping at the table when the deceased struck him, but in his confession said: "we was just sitting there drinking and talking at the kitchen table." There was further testimony by Mrs. Wall to the effect that some three weeks previously, appellant, who had been drinking, said regarding the deceased: "before he left he would cut his guts out." Mrs. Wall further admitted that Timms was causing trouble between her and the appellant. In his confession the appellant also admitted that he liked Mrs. Wall very much and that his fight with Timms was over her.

The appellant admits that he fatally stabbed the deceased, but claims that the circumstances were such that they failed to show that the slaying was willful, deliberate, and premeditated. We find no merit in this contention. There was evidence,

in our opinion, which the jury could properly consider in determining whether there was deliberate and premeditated intent to kill. Here, we have a quarrel over a woman, a threat by the appellant some three weeks before the killing that "he would cut his guts out," and the subsequent inflicting of the fatal wound upon a vital part of the body. This constituted evidence of a premeditated design to kill at least as strong as that found sufficient in *DeToro v. State,* 227 Md. 551, 552, 177 A. 2d 847; *Roberson v. State,* 224 Md. 326, 167 A. 2d 780; *Cummings v. State,* 223 Md. 606, 165 A. 2d 886; *Elliott v. State,* 215 Md. 152, 137 A. 2d 130; *Grammer v. State,* 203 Md. 200, 100 A. 2d 257; *Chisley v. State,* 202 Md. 87, 95 A. 2d 577.

Likewise without merit is the appellant's contention that he was too intoxicated to form the necessary intent to kill. The law on this subject is clear. Voluntary drunkenness is generally not a defense to a crime, and the triers of fact could properly find that the appellant was not drunk at the time of the homicide. *Lipscomb v. State,* 223 Md. 599, 165 A. 2d 918; *Breeding v. State,* 220 Md. 193, 151 A. 2d 743; *Stansbury v. State,* 218 Md. 255, 146 A. 2d 17; *Saldiveri v. State,* 217 Md. 412, 143 A. 2d 70; *Chisley v. State, supra.* The jury was not bound to believe the appellant's story.

The appellant's contention that he was deprived of his constitutional right to be present at the hearing in chambers of his motion for a directed verdict must be rejected. It is true that Article 5 of the Maryland Declaration of Rights gives the defendant in a criminal case the right to be present at every stage of his trial, but neither that article nor any other constitutional provision, State or Federal, requires the presence of the defendant when instructions to a jury are being considered and law arguments heard by the judge and counsel for the parties in chambers. *Brown v. State,* 225 Md. 349, 170 A. 2d 300, and cases there cited. A motion for a directed verdict is a matter of law which involves the legal sufficiency of evidence. There can be no doubt that the Brown case controls, and we hold that a motion for a directed verdict concerns a law argument, which is not a stage or step of the defendant's

criminal proceedings which requires his presence. See also *Harris v. Commonwealth* (Ky.), 285 S. W. 2d 489, where the defendant complained that the admissibility of evidence and a motion for a directed verdict were argued in his absence, but the court rejected his contentions and held that the right of a defendant to be present at a criminal proceeding does not extend to the reception of legal arguments.

The appellant's last contention that the furnishing by a former court reporter of a memorandum to the office of the State's Attorney and to the court prior to a motion for a new trial was an unwarranted interference with the due process of law and was prejudicial to his rights in the case, has no merit. In the first place the memorandum was not included in the record extract in accordance with Rule 828 b 1 (b), nor does it plainly appear that the point was preserved below as required by Rule 885. It was, however, included in the transcript and, because of the seriousness of the case, we have considered it as though it were properly before us for review. The furnishing of such a memorandum was clearly improper regardless of whether it was read and considered by the trial judge. It contained nothing but the most elementary "hornbook law," and its comments upon the evidence were not prejudicial to the defendant. In short, it is obvious that it brought nothing to the attention of the trial judge with which he was not already thoroughly familiar. Any impropriety, we think, was harmless and did not prejudice the appellant's case.

Having found no reversible error the judgment will be affirmed.

*Judgment affirmed.*