# WALTER GREEN, JR. *v.* STATE OF MARYLAND

[No. 836, September Term, 1980.]

*Decided June 3, 1981.*

The cause was argued before THOMPSON, MELVIN and WILNER, JJ.

*Gary W. Christopher, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.*

*Thomas P. Barbera, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *John L. Norton, State's Attorney for Dorchester County,* on the brief, for appellee.

MELVIN, J., delivered the opinion of the Court.

On November 21, 1979, a criminal information was filed in the Circuit Court for Dorchester County charging the appellant, Walter Green, Jr., with the theft of a lawn mower of the value of $300 or greater. Appellant was charged under Md. Code (1957, 1976 Repl. Vol., 1979 Cum. Supp.) Article 27, § 342. At a jury trial on February 4, 1980, appellant was found guilty of the charge and subsequently sentenced to ten years imprisonment.

Six questions are presented:

"1. Was it error to deny Appellant's challenge for cause of a juror who had been the victim of a similar larceny the week before the instant trial?

2. Did the court err in sustaining the State's objection to the cross-examination of an accomplice as to whether the accomplice was guilty of charges which were stetted in return for the testimony of the accomplice?

---

* Note: *Certiorari* denied, Court of Appeals of Maryland, September 9, 1981.

3. Did the court err in not ordering a new trial *ex mero motu* upon discovering, after rendition of the verdict but before judgment, the conflict of interest inherent in the prosecutor's prior criminal representation of the accused?

4. Was it error to deny Appellant's motion for judgment of acquittal where Appellant's conviction rested solely upon the uncorroborated testimony of an accomplice?

5. Did the court err in summarizing the evidence so as to highlight the State's case and inject the court's own view as to a crucial disputed fact?

6. Was it error to conduct the impaneling of the jury where the record fails to show that the Appellant was present or waived his right to be present?"

As we find no reversible error with respect to any of these questions, the judgment of conviction will be affirmed.

I

Appellant argues that it was reversible error for the trial court to refuse to strike for cause a potential juror whose store had been recently the object of a breaking and entering and a larceny of goods worth approximately $450.00. The venireman had told the judge, however, that this experience would not affect her ability to render a fair and impartial verdict, that she had no prejudice against people charged with stealing, and that she accepted "the presumption that ... Green sits here innocent until proven guilty beyond a reasonable doubt". After the court refused to strike for cause, appellant's trial counsel exercised one of his peremptory challenges to remove the venireman from the jury. Thereafter, he used his remaining peremptory challenges and told the court he was "satisfied" with the panel. Under these circumstances, we see no reversible error. *Garlitz v. State,* 71 Md. 293, 301 (1889); *see also McCree v. State,* 33 Md. App. 82, 97-98 (1976).

## II

Louis Addison had been charged as a codefendant in the theft of the lawn mower but pursuant to an agreement with the State the theft charged against him as well as an unrelated forgery charge in another county not involving the appellant had been placed upon the stet docket, in return for which Addison agreed to testify for the State in both cases. These facts were brought out by the prosecutor at the beginning of Addison's testimony on direct examination. On cross-examination by appellant's counsel, Addison repeated his understanding of the agreement. Referring to the stetted forgery charge in the other county, counsel then asked, "And are you guilty of that crime over there?" The following colloquy ensued:

"Q And are you guilty of that crime over there?

MR. NORTON [Prosecutor]: Objection.

THE COURT: Why do you wish to ask a question of this nature?

MR. LENTZ [Defense Counsel]: I think it's important to ascertain the reason this man is testifying in what incrimination or what crimes he may or may not being let óff on. If in fact he's not guilty over there, being stetted or cooperating doesn't mean much. But, if in fact he's guilty over there, it means a lot towards this man.

THE COURT: You're asking him, this witness, for an in court admission. I don't know what the status is going to be eventually or ultimately to be like in Easton or Talbot County —

MR. LENTZ: He said Queen Anne's.

THE COURT: I don't think he should be asked a question to incriminate himself to that extent whereby he gives an in court confession."

We perceive no reversible error. "The allowance or disallowance of certain questions on cross-examination normally rests within the sound discretion of the trial

judge." *Kable v. State,* 17 Md. App. 16, 30-31 (1971), *cert. denied,* 268 Md. 750 (1973). We find no abuse of discretion or arbitrary curtailment of the *extent* of cross-examination upon the proper subject of the reasons for the witnesses testifying for the State. *Cf. Johnson and Walters v. State,* 30 Md. App. 512, 515-516, *cert. denied,* 278 Md. 738 (1976).

## III

After the jury announced its verdict on February 4, 1980, the prosecutor, in argument on the issue of bond pending sentence, told the court that he had represented appellant when he was convicted over two years earlier of petty larceny. Despite appellant's failure to raise the issue at trial, on his motion for new trial (heard and denied February 15, 1980), or at the time of sentencing (April 7, 1980), he now argues that the trial court erred "in not ordering a new trial *ex mero motu* upon discovering . . . the conflict of interest inherent in the prosecutor's prior criminal representation of the accused." Appellant urges us to correct what he calls the "plain error" by reversing his conviction. As we see no "plain error", we decline to do so.

The mere fact that as a private attorney the prosecutor had once represented appellant in an unrelated case did not, standing alone, result in a conflict of interest such as to disqualify that attorney from acting as prosecutor in the instant case. On the record before us, there is no claim or indication that at the time the instant charge was brought against appellant there existed any attorney-client relationship between him and the prosecutor, either with respect to the totally unrelated case more than two years before or any other matter. Nor is there any claim or indication that in investigating or prosecuting the present case the prosecutor made use of any confidential information he *may* have received from the appellant in the prior case. In short, we perceive no error to be corrected, "plain" or otherwise. *See* 31 A.L.R.3d 953, and cases there cited.

6

## IV

Appellant contends that his conviction "rested solely upon the uncorroborated testimony of accomplices" and, therefore, the court erred in denying his motion for judgment of acquittal made at the close of the evidence. The State concedes that one of its witnesses, Louis Addison, was an accomplice and that appellant's conviction could not rest upon his testimony alone unless corroborated by independent evidence tending either to identify the appellant with the perpetrators of the crime or to show the participation of the appellant in the crime itself. *Brown v. State*, 281 Md. 241 (1977). Appellant does not argue that other witnesses did not corroborate Addison's testimony. He argues only that these other witnesses were also accomplices and, therefore, could not serve the corroborating function. The short answer to the argument is that the other witnesses, Sylvester Bolden and his wife, Ida Mae Bolden, were not shown to be accomplices. Consequently, their testimony properly corroborated that of Addison.

## V

Appellant next contends that in its instructions to the jury the trial court violated Maryland Rule 757 c. That Rule provides in part that "the court may make such summation of or reference to the evidence as may be appropriate in order to present clearly to the jury the issues to be decided by them." Appellant argues that in summarizing the evidence the trial court unfairly highlighted the State's case and "inject[ed] the court's own view as to a crucial disputed fact." There is no merit to the argument.

The record shows that several State witnesses identified from pictures the stolen lawn mower that was in appellant's possession shortly after its theft from the owner — the owner himself being one of those witnesses. There was some disagreement, however, between the witnesses as to the color of the lawn mower. Appellant, therefore, contends that

it was unfair for the court to tell the jury that, "Each of the witnesses, as you recall, saw the pictures and identified the tractor [lawn mower] as being the same tractor." As this is what happened, we see nothing unfair about the statement. Moreover, the court further mentioned to the jury the color discrepancy and said: "Without my making too many comments on the color of this machine that was allegedly stolen from Ernest Elliott, I'm going to leave the testimony as you understand it to be from the various witnesses, that testimony concerning this machine." Furthermore, the court in substance also told the jury, as required by Rule 757 c, "that they are the sole judges of the facts and that it is their function to determine the weight of the evidence and the credibility to be given to any witness." Rule 757 c. We perceive no violation of the Rule.

## VI

Appellant's final contention is that because he was not present at three bench conferences, all at the request of appellant's counsel, during the impaneling of the jury the judgment of conviction must be reversed.

The first bench conference occurred at the beginning of the voir dire examination. The record shows the following:

> "THE COURT: Ladies and gentlemen, I've got about four or five questions to ask you on voir dire. If you want to respond in the affirmative to any of these questions, I would ask either or all of you to rise, if you would.
>
> First question is: Do you know Walter Green, Jr., or any of those witnesses that have been called or will be called by the State.
>
> Now, I don't have those witnesses, Mr. Norton. I have been looking thru the file here but I haven't seen them yet.
>
> MR. NORTON [Prosecutor]: Yes, Your Honor, I'll read off the list, if the Court would so wish.

Ernest S. Elliott, If you could stand.

MR. LENTZ [Defense Counsel]: Can we approach the bench, Your Honor?

THE COURT: Yes, sir.

## AT THE BENCH

MR. LENTZ: Next thing is how they know him, related or what?

THE COURT: Okay.

MR. LENTZ: I know the probation officer, I would request he be stricken for cause.

MR. NORTON: I think that would be proper. He may well have Mr. Green in his office on probation.

THE COURT: What is his name?

MR. NORTON: Mr. Rogers, Hobert Rogers. We would have no objection to him being stricken for cause.

THE COURT: Which one — I'll ask him — go thru the other State witnesses.

## END OF CONFERENCE AT THE BENCH"

At the end of this conference, the prosecutor announced in open court the names of the prospective witnesses for the State and the court proceeded to ask the veniremen if any were known to them. During the proceedings, venireman Hobert Rogers, whom the court had not yet actually stricken for cause but whose striking the prosecutor had agreed at the bench conference not to oppose, announced that he knew the appellant. The following then occurred:

"THE COURT: How do you know him?

MR. LENTZ: Wait a minute, objected to. May we now — I objected to that question and I think we have already agreed he would be stricken.

THE COURT: He will be stricken. That's the one you mentioned earlier at the bench.

All right, Mr. Rogers, you're excused. This is a matter I had taken up earlier with Mr. Lentz and the State's Attorney."

Three other veniremen stated that they were close social friends of the victim and had known him for many years. A fourth venireman said she was the sister of the victim's wife, who was a State's witness. In answer to a question from appellant's counsel, one of the four said that "[i]n all honesty" she would "probably" "give great weight to" the victim's testimony. The court thereupon excused her. Appellant's counsel then asked to approach the bench and the second bench conference ensued.

At the second bench conference appellant's counsel moved that the other three veniremen be struck for cause. The prosecutor did not object to striking the victim's sister-in-law, but did object to striking the other two, pointing out that each had stated they would be able to render a fair and impartial verdict. The court granted the motion to strike all three for cause, the bench conference ended and the court resumed the voir dire examination of the remaining veniremen in open court.

One of the ensuing questions asked by the court was, "Has either juror this morning been a victim in any recent crime or any crime or has any member of your immediate family been a victim of any crime?" Two veniremen responded. One of them said she and her husband were victims of a robbery that occurred ten years ago in Ohio; the other (see, *supra,* part I of this opinion) that "last week" a store owned by her and her husband had been broken and entered and merchandise value at "around $450" had been stolen. Apparently she was not present during the breaking and entering. After completion of the questioning of these veniremen by both the court and defense counsel, the following occurred:

"MR. LENTZ [Defense counsel]: No further questions.

THE COURT: They are all the questions, aren't they, Mr. Lentz?

MR. LENTZ: As far as I know, yes, sir.

Can we approach the bench, Your Honor.

## AT THE BENCH

THE COURT: After the voir dire I have expressed to the jury do you have any other questions?

MR. LENTZ: No, sir. I would move to strike for cause Mrs. Kniskern. I think she was a victim of a robbery some 10 years ago.

I very seriously move to strike Mrs. Meredith for cause being a victim of a breaking and entering and larceny, which this case involves, just one week prior hereto.

THE COURT: That makes a total of six you have requested.

MR. LENTZ: Yes.

THE COURT: For cause.

MR. NORTON [Prosecutor]: Your Honor, we think, once again, Kniskern and Meredith, they are able to fairly judge and those events would have no influence on them in this case.

MR. LENTZ: I feel much stronger for Meredith than for Kniskern due to the recency of it.

MR. NORTON: I object. I think Mrs. Kniskern can certainly form an opinion and judgment.

\* \* \*

THE COURT: Well, Mr. Lentz, they both indicated they can come back with a fair and impartial verdict even though they are victims of crime, one as recently as last week and one as long ago as 10 years ago. State's Attorney objects. Court won't strike them for cause."

While still at the bench, the prosecutor's motion to correct a typographical error in the charging document was granted without objection and the bench conference ended.

The prosecutor and defense counsel then proceeded to select the jury from a list of twenty-five veniremen, five of whom the court had already excused or stricken for cause. Using alternating challenges (Md. Rule 753 b 2) twelve jurors were seated without objection from appellant or his counsel. At that point, appellant had used only two of the four peremptory challenges available to him — one of which was used to remove one of the two veniremen whom the court had refused to strike for cause. Before the jury was sworn, appellant used his two remaining peremptory challenges to strike two of the previously accepted jurors, but he did not strike the other venireman the court had refused to strike for cause.

Citing *Bunch v. State,* 281 Md. 680 (1978), *Haley v. State,* 40 Md. App. 349, *cert. denied,* 284 Md. 744 (1978), and Md. Rule 724,[1] appellant now argues that he had a right to be

---

1. Rule 724 provides:

"a. *When Presence Required.*

The defendant shall be present at every stage of the trial, including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as provided by these Rules.

b. *When Presence Not Required.*

A defendant need not be present:

1. At a conference or argument on a question of law;

2. When a nolle prosequi or stet is entered pursuant to Rule 782 (Nolle Prosequi and Stet);

3. At a reduction of sentence pursuant to Rule 773 (Sentence — Review) or Rule 774 (Sentence — Revisory Power of Court);

4. At any stage of the proceedings if the defendant is a corporation.

c. *When Presence Waived.*

A defendant initially at trial waives his right to be present when:

1. He voluntarily absents himself after the trial has commenced, whether or not he has been informed by the court of his right to remain during trial; or

2. He engages in conduct to justify his being excluded from the courtroom."

present at each of the three bench conferences to which we have referred and that his absence therefrom requires a reversal.

We shall assume for the purposes of this appeal that although present in the courtroom appellant was not present at any of the three bench conferences. We hold that under the circumstances presented, however, that his presence at the conferences was not required. We explain.

The right of a criminal defendant to be present at every stage of the trial is a common law right, preserved by Art. 5 of the Maryland Declaration of Rights, "is to some extent protected by the Fourteenth Amendment of the United States Constitution and is guaranteed by Maryland Rule 724." *Porter and Morris v. State,* 289 Md. 349, 352 (1981). Maryland Rule 724 specifically includes the impaneling of the jury as a stage of the trial at which the defendant's presence is required. *Bunch v. State, supra,* and *Haley v. State, supra.* But as said by the Court of Appeals in *Porter and Morris, supra,* at 353-354:

> "The critical question in most cases involving a claimed denial of the right is whether the defendant's absence occurred during a 'stage of the trial.' Under our cases, whether a particular event occurred during a stage of the trial ordinarily involves a consideration of *when* the event occurred and *what* was involved. Normally, the right to be present does not attach until the process of impaneling the jury for a specific case begins. . . .

> "On the other hand, not everything which happens during and after the impaneling of the jury is deemed a stage of the trial requiring the defendant's presence. *Hughes v. State, supra,* 288 Md. at 225-226; *Bunch v. State, supra,* 281 Md. at 684-685, and cases there cited. The substance of what is involved must also be taken into account. Certain events, because of the nature of what occurs, are viewed as interruptions in the stages of

the trial." (Emphasis in original.) (Citation and footnote omitted.)

Maryland Rule 724 b 1 specifically provides that a "defendant need not be present ... [a]t a conference or argument on a question of law."

In *Bunch v. State, supra,* after the jury had been impaneled and during the actual trial, the court received a note from a juror saying, "Sir, one of the jurors may have to disqualify himself. Please advise." The trial judge directed counsel to approach the bench and the note was discussed with counsel out of the presence of the defendant. At the bench conference, the trial judge, without objection from counsel, decided to send the juror in question a note telling him to write down the reasons why he may have to be disqualified. The judge told counsel, "that is the only way we can find the facts." Thereafter the juror presented the judge with a note indicating that he had "become biased during the course of the trial ... for the prosecution (State)." At the resumed bench conference, again out of defendant's presence, the question of whether to disqualify the juror was discussed. The prosecutor "in fairness to the defendant" thought the juror "should be excused at this time." The defense attorney did not want the juror disqualified but, instead, moved for a mistrial. The judge denied both the prosecutor's motion to disqualify the juror and defense counsel's motion for a mistrial. It will be noted that the trial judge's decision not to disqualify the juror in question was based on facts that had been adduced from the juror out of the presence of the defendant. In effect, the judge had conducted a voir dire examination of the juror, albeit in written form, out of the defendant's presence when he had no opportunity to give aid to his counsel in developing those facts.

In reversing Bunch's conviction the Court of Appeals stated, at 281 Md. 686-687:

"The provision in Maryland Rule 724, and its predecessor Rule 775, specifically including the impaneling of the jury as a stage of the trial at which the defendant's presence is required,

embodies the holding of the Supreme Court in *Hopt v. Utah, supra,* and *Lewis v. United States, supra.* The reason for the provision, as set forth by the Supreme Court in *Hopt,* is that the defendant, being entitled to an impartial jury, may give aid to his counsel and the court in the selection of who should be on the jury. This reason is just as applicable to a proceeding subsequent to the impaneling of the jury involving a determination of whether a juror should be excused for bias." (Footnote omitted.)

In *Hopt v. Utah,* 110 U.S. 574, 4 S. Ct. 202, 28 L. Ed. 262 (1884), one of the cases whose holding the Court of Appeals said was embodied in Maryland Rule 724, the Supreme Court held that the defendant was deprived of "due process of law required by the Constitution" when, after six jurors were challenged for actual bias, the challenged jurors were examined out of the presence of the defendant to determine whether they were in fact free of bias. The Utah Criminal Code of Procedure in effect at the time prescribed grounds for challenge by either party of proposed jurors. The Code then provided that a challenge be "tried" by three impartial "triers," not on the jury panel, and appointed by the court. At the "trial of the challenge" the challenged juror "may be examined as a witness to prove or disprove the challenge, and must answer every question pertinent to the inquiry," § 249; "other witnesses may also be examined on either side, and the rules of evidence applicable to the trial of other issues govern the admission of evidence on the trial of the challenge," § 250.

In *Hopt,* the "trial of the challenge" took place outside the courtroom out of the presence not only of the defendant and his counsel but of the trial judge. The Supreme Court, noting that the Utah Code required the defendant's presence in a felony trial, said:

"The Criminal Code of Utah does not authorize the trial by triers on grounds of challenge to be had apart from the court, and in the absence of the defendant. The specific provision made for the

examination of witnesses 'on either side,' subject to the rules of evidence applicable to the trial of other issues, shows that the prosecuting attorney and the defendant were entitled of right to be present during the examination by the triers. It certainly was not contemplated that witnesses should be sent or brought before the triers without the party producing them having the privilege, under the supervision of the court, of propounding such questions *as would elicit the necessary facts,* or without an opportunity to the opposite side for cross-examination." (Emphasis added.) *Id.* at 577.

In this context, the Court went on to say, at 578:

"The requirement [of the Utah Criminal Code] is, not that he must be personally present at the trial by the jury, but 'at the trial.' The Code, we have seen, prescribes grounds for challenge by either party of jurors proposed. And provision is expressly made for the 'trial' of such challenges, some by the court, others by triers. The prisoner is entitled to an impartial jury composed of persons not disqualified by statute, and his life or liberty may depend upon the aid which, by his personal presence, he may give to counsel and to the court and triers, in the selection of jurors. The necessities of the defence may not be met by the presence of his counsel only. For every purpose, therefore, involved in the requirement that the defendant shall be personally present at the trial, where the indictment is for a felony, the trial commences at least from the time when the work of empanelling the jury begins."

*Lewis v. United States,* 146 U.S. 370, 13 S. Ct. 136, 36 L. Ed. 1011 (1892), the other case whose holding the Court of Appeals said was embodied in the Maryland Rule provision including the impaneling of the jury as a stage of the trial at which the defendant's presence is required, involved the making of peremptory challenges. There the defendant's

counsel was required to make his peremptory challenges from a list of qualified veniremen at a time when neither they nor the defendant were present. The Court held:

"Thus reading the record, and holding as we do that making of challenges was an essential part of the trial, and that it was one of the substantial rights of the prisoner to be brought face to face with the jurors at the time when the challenges were made, we are brought to the conclusion that the record discloses an error for which the judgment of the court must be reversed." *Id.* at 376.[2]

*Haley v. State, supra,* involved the defendant's absence from several bench conferences at which the court examined individual veniremen regarding their possible bias or impartiality. We held that "examination of prospective jurors on their voir dire is a stage of the trial at which the defendant has a right to be present," *id.* at 353, and that "[i]t is only during such steps of jury selection as the voir dire and peremptory challenges that the defendant's presence has any substantial meaning, for only then is he able to participate in the selection of the men and women who will try his case." *Id.* at 351.

In the case at bar, the appellant was present during the entire voir dire examination of all the veniremen and had been "brought face to face" with them at the time all

---

**2.** The Court also quoted with approval from Lamb v. The State, 36 Wisconsin 424, involving similar facts:

" 'We cannot but agree with the learned counsel for the plaintiff in error, that this mode of empanelling the jury largely impaired the right of peremptory challenge, essential in contemplation of law to the impartiality of the trial. For it is, as Blackstone says, an arbitrary and capricious right; and it must be exercised with full freedom, or it fails of its full purpose. *The mode adopted gave no opportunity for comparison and choice between jurors, and little opportunity for observance of each juror, apparently essential to the exercise of a right so visionary and fanciful.'* " (Emphasis added) Id. at 378.

*See* Dean v. State, 46 Md. App. 536 (1980), where we held that in the jury selection process the defendant had been deprived of the right of "informed and comparative selection."

challenges were made. During none of the three bench conferences, at which we assume he was not present, were any veniremen questioned either orally (as in *Haley*) or in writing (as in *Bunch*). Each of the conferences concerned only legal argument of counsel based only on facts already adduced in appellant's presence when he had the full opportunity to give aid to his counsel in developing those facts. Thus, the purpose of Rule 724 was fully met. Under the circumstances we hold that the three bench conferences here involved were closely akin to a hearing on a defendant's motion for judgment of acquittal at the close of all the evidence. In *Martin v. State,* 228 Md. 311, 316-317 (1962), such a hearing held in chambers out of defendant's presence was held to be "not a stage or step of the defendant's criminal proceedings which requires his presence." Obviously, the hearing could only involve the application of the law to facts already adduced in the defendant's presence. The Court said:

> "It is true that Article 5 of the Maryland Declaration of Rights gives the defendant in a criminal case the right to be present at every stage of his trial, but neither that article nor any other constitutional provision, State or Federal, requires the presence of the defendant when instructions to a jury are being considered and law arguments heard by the judge and counsel for the parties in chambers. *Brown v. State,* 225 Md. 349, 170 A.2d 300, and cases there cited. A motion for a directed verdict [judgment of acquittal] is a matter of law which involves the legal sufficiency of evidence." *Id.* at 316.

Although *Martin v. State* was decided without reference to Maryland Rule 775, the precedessor to present Rule 724, we think that decision is fully applicable to the present case, for as already mentioned, the present rule, unlike its predecessor, specifically provides that the defendant's presence is not required "[a]t a conference or argument on a question of law." In effect, the present rule embodies the *Martin* holding.

18

In sum, as the bench conferences in question involved only legal argument on the basis of facts already developed in defendant's presence, we hold that his presence thereat was not required.[3]

*Judgment affirmed; costs to be paid by appellant.*

_____

3. Although not necessary to our decision, we note that appellant has no cause whatever to complain about the first two bench conferences, for at each of them the only matters discussed were the qualifications of certain veniremen challenged by appellant's counsel. The court granted counsel's request in each instance to strike them for cause.