## MELVIN JONES *v.* STATE OF MARYLAND

[No. 482, September Term, 1970.]

*Decided April 29, 1971.*

The cause was argued before MURPHY, C.J., and MOY-LAN and POWERS, JJ.

*Michael G. Trainer* for appellant.

*James L. Bundy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, State's Attorney for Prince George's County,* and *E. Allen Shepherd, Jr., Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

In addressing itself not simply to the case then before it, but to a grave problem of contemporary national concern, as well, the Supreme Court, in *Illinois v. Allen,* 397 U. S. 337, said:

> "It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case." p. 343.

Agreeing without reservation with the philosophy expressed by the Supreme Court, we, nevertheless, feel that in the case now before us for review, the trial court exceeded the bounds of permitted discretion in dealing with an admittedly difficult situation.

The appellant, Melvin Jones, was convicted by a jury in the Circuit Court for Prince George's County of 1) rape, 2) assault with intent to rape and 3) three separate charges of assault with intent to maim. Upon these

convictions, he was sentenced to terms of twenty, five, ten, ten, and five years respectively, all sentences to be served consecutively, for a total sentence of fifty years imprisonment.

On appeal, he contends:

(1) That his appearances before the jury, shackled and gagged, denied him a fair and impartial trial; and

(2) That the statement of one prospective juror upon voir dire examination to the effect that that juror knew that the appellant's co-defendants had been convicted, which statement was made in the presence of the rest of the jury panel, denied him a fair and impartial jury.

Just before the commencement of the appellant's trial on March 18, 1970, the trial judge was passing the entrance to the courtroom and observed therein the appellant involved in some sort of altercation with four deputy sheriffs. The deputies removed the appellant from the courtroom. The court then, on its own initiative, ordered the deputies to shackle and gag the appellant. When the court convened and the case was called for trial, the appellant was seated at the trial table in such bound and gagged condition. The prospective jurors were all in the room. As soon as the clerk called the case for trial, the court announced:

> "Let the record show that while the Court was passing the entrance to this courtroom it observed the misconduct of the defendant, which it will describe in detail later by a written memorandum.[1] For that reason the Court, on its own motion, ordered this defendant shackled and muffled at the mouth. He will be tried in this county this day."

The appellant's counsel promptly requested a bench conference and therein urged that the appellant could

---

1. No such memorandum was subsequently filed.

not receive a fair trial either from the jury panel then in the room or from the trial judge himself. He moved for a mistrial and requested that the case be assigned to another judge with another jury panel being brought in. The motion was denied.

Shortly thereafter, the court, on its own motion, directed that the appellant's gag be removed so that he could communicate with his counsel, after having been assured by appellant's counsel that the appellant had agreed not to make any undue noise. The jury was then selected and sworn. Before opening statements were made, the following colloquy took place:

> "The Court: Now, Melvin Jones, are you going to behave yourself if I take those cuffs off you?
> Melvin Jones: (In a low voice) Yes.
> The Court: Pardon? I can't hear you.
> Mr. Trainer: The defendant said, 'Yes, sir.'
> The Court: I have to hear him.
> (The defendant made no response).
> The Court: Leave them on him, Mr. Sheriff. If he doesn't want to open his mouth we will leave them on."

Before the commencement of the afternoon session, the court directed that the handcuffs be removed, after having been assured by the appellant that he would behave himself.

American courts have few precedential guideposts in dealing with the essentially new phenomenon of disruptive or potentially disruptive courtroom behavior. The first significant discussion, within a constitutional framework, of what remedial steps may be taken to insure or to restore order in the court was *Illinois v. Allen, supra.* The court there offered the opinion that, "No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations." It set out at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant:

(1) To bind and gag the defendant, thereby keeping him present in the courtroom;
(2) To cite the defendant for contempt; or
(3) To remove the defendant from the courtroom until he promises to conduct himself properly.

The court then pointed out that to resort to binding and gagging a defendant would be the most extreme of these harsh, but perhaps unavoidable, measures. The majority spoke of such a technique in the following terms, at 344:

"Trying a defendant for a crime while he sits bound and gagged before the judge and jury would to an extent comply with that part of the Sixth Amendment's purposes that accords the defendant an opportunity to confront the witnesses at the trial. But even to contemplate such a technique, much less see it, arouses a feeling that no person should be tried while shackled and gagged except as a last resort. Not only is it possible that the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant, but the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold."

In assigning to the lowest position on the totem pole of judicial sanction the extreme measure of shackling and gagging, Justice Brennan said, in his concurring opinion, at 350-351:

"I also agree with the Court that these three methods are not equally acceptable. In particular, shackling and gagging a defendant is surely the least acceptable of them. It offends not only judicial dignity and decorum, but also that respect for the individual which is the lifeblood of the law."

In the *Allen* case, the Supreme Court made it plain that, even in dealing with the less stringent remedy of removing a defendant from the courtroom, it could countenance resort to extreme measures only under the direst necessity and only after every earnest effort to avoid the impasse had been tried and failed.

The compelling circumstances facing the trial court in *Allen* were far from analogous to those in the case at bar. In that case, the defendant had insisted upon conducting his own defense, even after the court had appointed counsel to aid him. The defendant there began examining the first prospective juror at great length and had to be requested by the court to confine his questions solely to matters relating to the prospective juror's qualifications. At that point, the defendant started to argue with the judge in a most abusive and disrespectful manner. In desperation, the judge asked appointed counsel to continue with the voir dire examination. The defendant continued to talk and proclaimed loudly that the appointed attorney was not going to act for him. He then threatened the judge in the following terms: "When I go out for lunchtime, you're [the judge] going to be a corpse here." At that point, he grabbed the file from his appointed attorney, ripped it apart, and threw the papers all over the floor. Even under that extreme provocation, the trial judge did not remove him from the courtroom but proceeded to give him the following warning: "One more outbreak of that sort and I'll remove you from the courtroom." Even after the warning, the defendant continued to talk back to the judge, "There's not going to be no trial, either. I'm going to sit here and you're going to talk and you can bring your shackles out and straight jacket and put them on me and tape my mouth, but it will do no good because there's not going to be no trial." After some additional abusive remarks, the trial judge ordered the defendant removed from the courtroom.

After the selection of the jury had been completed and after a noon recess, but before the jury was brought in-

to the courtroom, the defendant was brought again before the trial judge. The trial judge indicated that he would permit the defendant to remain in the courtroom if he "behaved [himself] and [did] not interfere with the introduction of the case." Allen's counsel moved to exclude witnesses. Allen jumped up and proclaimed, "There is going to be no proceeding. I'm going to start talking and I'm going to keep on talking all through the trial. There's not going to be no trial like this. I want my sister and my friends here in court to testify for me." The trial judge again ordered that Allen be removed from the courtroom. On several occasions, Allen was brought into the courtroom for identification purposes. On one of these appearances, he responded to one of the judge's questions with vile and abusive language.

After the prosecution's case had been presented, the trial judge again assured Allen that he could return to the courtroom whenever he agreed to behave himself properly. He was subsequently permitted to be present during the presentation of the defense case.

The Supreme Court's holding in *Allen* could not have been more clear:

> "[W]e explicitly hold today that a defendant can lose his right to be present at trial [or, presumably, to remain unshackled and ungagged] if, after he has been warned by the judge that he will be removed [or shackled and gagged] if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom [or, presumably, unshackled and ungagged]. Once lost, the right to be present [or to be unshackled and ungagged] can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." *Illinois v. Allen, supra,* p. 343.

In his concurring opinion, Justice Brennan spoke also of the necessity of giving a defendant full and explicit warning of the sanctions to be invoked if the defendant refuses to comport himself in an orderly fashion:

> "Of course, no action against an unruly defendant is permissible except after he has been fully and fairly informed that his conduct is wrong and intolerable, and warned of the possible consequences of continued misbehavior. The record makes clear that respondent was so informed and warned in this case. Thus there can be no doubt that respondent, by persisting in his reprehensible conduct, surrendered his right to be present at the trial." *Illinois v. Allen, supra,* p. 350.

In the case at bar, the trial judge was presented with a situation which he deemed to be potentially disruptive. Under the standards established by the *Allen* case, however, his remedial actions were, at best, premature. There are no facts in the record detailing any of the surrounding circumstances from which we may judge the reasonableness or unreasonableness of the appellant vis-a-vis the sheriff's deputies in the courtroom altercation before the court convened, even if that situation were material. In any event, it is clear that there was absolutely no disruptive or unruly behavior during the course of the trial. There was no warning given to the appellant to abstain from obstreperous behavior and no subsequent flouting of that warning before the shackles and gag were clamped upon him.

Under the circumstances of this case, we hold that the appellant was unconstitutionally denied the "due process of law" guaranteed him by the Fourteenth Amendment.

In maintaining the fine balance between solicitous regard for the rights and dignity of every defendant and vigilant concern for the dignity, order and decorum of our courts of justice, we think the proper procedure requires that the trial court not act overtly in mere antici-

pation of trouble. If a defendant at any time during the course of his trial acts in a manner disruptive of that trial, we think the trial judge should excuse the jury from the courtroom, should admonish the defendant appropriately and should give him full and explicit warning that any further disruption may result in the imposition of an appropriate sanction. If evidence of probable disruptive behavior is brought to the attention of the judge even before trial, it would be appropriate, when the court in its discretion feels it necessary, for the judge, again in the absence of a jury, firmly and explicitly to admonish the defendant as to what the consequences to him of any disruptive behavior might be. If, after full and explicit warnings have been given, a defendant, nevertheless, persists in disruptive conduct, it would then be appropriate for the trial judge, in the exercise of his discretion, to employ such *Allen* type sanctions deemed by him to be absolutely necessary for the trial to proceed in an orderly fashion.

In view of our disposition of this case under the appellant's first assignment of error, it is unnecessary for us to reach the second contention raised by the appellant.

*Judgments reversed; case remanded for a new trial.*