516 A.2d 1015

Daniel Dennis COLLINS

v.

STATE of Maryland.

No. 189, Sept. Term, 1986.

Court of Special Appeals of Maryland.

Nov. 6, 1986.

Certiorari Denied March 2, 1987.

174

Clarence W. Sharp, Assigned Public Defender, Annapolis (Alan H. Murrell, Public Defender, on the brief, Baltimore), for appellant.

Ann E. Singleton, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, William R. Hymes, State's Atty. for Howard County and Kate O'Donnell, Asst. State's Atty. for Howard County, on the brief, Ellicott City), for appellee.

Argued before GARRITY, ALPERT and BLOOM, JJ.

ALPERT, Judge.

THE CLERK: Hear ye, hear ye, hear ye, anyone having business with the Circuit Court for Howard County, please come forward, His Honor's court is now in session, The Honorable Guy J. Cicone presiding.

THE COURT: Good morning, everyone. Be seated, please. And you will rise when I come in.

MR. COLLINS: Man, f___ you.

THE COURT: What'd you say?

MR. COLLINS: I said f___ you.

THE COURT: Is that what you said? All right. Uh, take
account of this. Let's go with the motion.

Thus began the trial of appellant Daniel Dennis Collins
upon charges of kidnapping, rape, robbery, assault with
intent to murder and several related offenses. Collins was
found guilty of all charges against him. Throughout the
course of his trial and sentencing, Collins engaged in speech
and conduct so noisy, offensive and disruptive that it be-
came difficult (if not impossible) to carry on either proceed-
ing with him present. At trial, Collins was handcuffed,
gagged, and then removed from the courtroom. His sen-
tencing was cut short when he lunged for counsel and was
dragged out of the hearing by deputy sheriffs. A hearing
to "clarify" that sentence was conducted two days later in
Collins's absence.

On appeal, Collins raises two issues:

I. Whether the trial court erred in refusing to grant a
 mistrial because Collins's repeated outbursts in the
 presence of the jury denied him a fair trial?

II. Whether the sentencing "clarification" resulted in an
 illegal sentence?

At 6:30 p.m. on January 5, 1985, Joann C. returned to her
townhouse in Columbia after stopping for groceries on her
way home from work. As she got out of her Volvo sedan,
Joann noticed a young, slightly-built black male walking
toward her about two houses away. Getting a "feeling that
he was up to no good," Joann got back in her car and locked
the door. As she tried to start the car, the young man
smashed through her window, pounced on her, and slashed
at her clothing with a knife. The assailant threatened to
kill Joann if she moved or tried to call out. At knife-point,
the young assailant forced Joann to drive toward Baltimore
City. When she screamed for help at a nearby car, he
pushed her into the back seat and began to drive. At a stop
light, Joann sprang from the back seat, leaped out of the
door and fell onto the street. The assailant drove off with
her car. Joann identified Daniel Collins as the person who

had broken into her car, attacked her, forced her to drive, and then stole her vehicle.

Soon after Joann C. was attacked, a Volvo sedan forced Lisa K. off Route 29 and onto the shoulder of the road. As she got out to inspect the damage to her car, the Volvo drove up and a young, slightly-built black male stepped out. He came up behind Lisa, grabbed her with one hand, and stuck a knife to the back of her head. The young assailant forced Lisa over the guard rail, down a hill, and forcefully raped her while holding the knife to her throat. After the rape, the assailant otherwise physically and sexually assaulted Lisa. When she screamed, he spit in her face, took her jewelry and coat, walked up the hill, and drove away. Lisa discovered that, in addition to being raped, she had been cut about the head by her assailant. Alone, she drove herself to the hospital. Lisa K. identified Daniel Collins as the person who had run her off the road, raped, and robbed her.

Collins was tried for the attacks upon Joann C. (case number 13796) and Lisa K. (case number 13795) jointly.

## I. *Trial on the Merits*

At his trial, Collins disrupted every phase of the proceedings at which he was present. Soon after the jury was seated and the prosecuting attorney, Ms. O'Donnell, began her opening remarks, Collins began to shout a continuous stream of obscenities. At the conclusion of the State's opening, a recess was taken.

After the recess, Collins indicated through counsel that he no longer wished to be present at his trial and that he wished to discharge his attorney. Both requests were denied. At that point, the jury was brought back into the courtroom. The following exchange took place in their presence:

MR. COLLINS: Eh, man, he ain't my lawyer, he ain't representing me. I don't want that s___ to said. Let that state for the record, punk.

THE COURT: He will remain in this courtroom to assist you.

MR. COLLINS: I don't want him, man. I don't want his g_ _ d_ _ _ assist he ain't assist me. I told him I didn't want these m_ _ _ _ _ f_ _ _ _ _ _ cases tried together.

Defense counsel, Mr. Willemin, then approached the bench with the prosecutor and requested that his client be excluded from the courtroom. After discussing the need for an in-court identification of Collins by the State's first witness, constitutional problems attendant to excluding a defendant from his trial and alternatives to excluding Collins, the court denied defense counsel's motion. The jury was then sent out of the courtroom and the court sought and received an assurance of good behavior from Collins:

THE COURT: Let me finish. If you're gonna continue to be disruptive, not even to permit your own attorney to make his opening statements, I'm gonna remove you from the courtroom and have you brought in only for the purpose of identification. Now what is your choice?

. . . . .

Now I'm asking you if you're going to be disruptive when he makes his opening statements and questions witnesses?

MR. COLLINS: Nah, I'm gonna sit back and enjoy this show. Y'all go on and do y'all thing.

The State examined Joann C., its first witness, without disruption by Collins. During cross-examination, however, Collins interrupted his attorney to ask the court to excuse him from the courtroom, " 'cuz, uh ... the man railroad me, man." At the bench, the court instructed counsel to continue and "if he starts to raise a ruckus, we'll excuse him." Further into this cross-examination, Collins began to beat on the trial table, to sing [1] and to hum. Although warned

---

1. Collins's singing and talking was in a form commonly referred to as "rapping."

by the court to "quiet down," Collins continued to be disruptive throughout and until the end of Joann's cross-examination. When counsel concluded, an early luncheon recess was granted because of Collins's behavior.

After the recess, the court again warned Collins to calm down. The jury was then brought back into the courtroom. At the bench, defense counsel made the third motion to excuse Collins. For the third time, the motion was denied, again, because of the need to have Collins identified by the State's next witness. When Collins continued to beat on the furniture, the court instructed a deputy to handcuff Collins, which the deputy did in the presence of the jury. The second witness, Lisa K., was sworn and started to testify. Immediately, Collins began to shout at her, which prompted the court to order him gagged. At that point, pandemonium broke out in the courtroom with the jury looking on:

MR. COLLINS: I said, uh, hello.

THE COURT: Wrap, wrap his mouth.

MR. COLLINS: Wrap it up, wrap it up. Wrap, wrap, wrap, wrap, wrap.

THE COURT: Get some cotton. Let's wrap his mouth.

MR. COLLINS: You ain't gonna put your dirty tie in my mouth, now, man. (Unintelligible few words). Them m____f ____ homosexuals. (GUARDS AND DEPUTIES ATTEMPTED TO RESTRAIN THE DEFENDANT) Better get 'em. Uh oh. Especially this big one....

THE COURT: Has anyone gone to get ...

MR. COLLINS: Ohhh.

THE COURT: ... what I've asked for?

GUARDS AND DEPUTIES IN UNISON: Yes. Yes, Your Honor. Yes.

MR. COLLINS: The jolly green giant got me. Help, help. God, I can't move at all. Goddamn, he's gripping—you holding them d____ tight, too.

MS. O'DONNELL: Lisa, stay calm.

THE WITNESS: (Crying) I'm all right.

MS. O'DONNELL: You're, you're, you're safe.

THE WITNESS: All right.

THE COURT: Now don't get scared.

MS. O'DONNELL: You're safe.

THE COURT: Please don't get scared.

MR. COLLINS: Oh, that b____ ain't scared. F___ you talking about getting scared? All these m_____ f_____ giants, and you telling mother—I'm the one scared. F___ is you talking about? Don't be scared. Them m_____ f_____ ... you crackers a trip. Boy. I ain't even gonna give you no (unintelligible word), pimp.

MR. WILLEMIN: We're getting the stuff, Your Honor.

THE COURT: You're getting what?

MR. WILLEMIN: We're getting the, uh, apparatus.

THE COURT: Make sure it's sanitary.

MR. WILLEMIN: It will be.

. . . .

(Counsel approached the bench and the following ensued.)

MR. WILLEMIN: Your Honor, at this time ... uh, of course, you know I've asked a number of times that the man be excluded from the courtroom.

. . . .

And I can understand that, but at this point, after this lengthy outburst

. . . .

and after the fact that he's been surrounded

. . . .

by deputies and, and the type of comments that he's making

. . . .

which I hope the record's picking up.

THE COURT: Sure.

MR. WILLEMIN: Uh, I believe I have—

. . . .

I believe it's impossible for him at this time to receive a fair and impartial trial before this jury. And I would

. . . .

ask the Court—well, this—

. . . .

is the only jury that we've had to this (inaudible).

. . . .

I would ask Your Honor to grant a mistrial in this case at this time.

. . . .

MS. O'DONNELL: Your Honor, this behavior is at the, uh—is being in no way prompted by the State, but by the defendant.

. . . .

It is, I would agree, uh, probably prejudicial to him. However, Your Honor, that is a situation that

. . . .

is not the fault of the State. And this case would have to be tried sooner or later by, by a jury. I would ask—I would join in the request now that he be removed from the courtroom until the identification portion of the testimony.

THE COURT: No, if they can stuff his mouth, then he—no, let him be identified by this young lady. And then we'll remove him from the courtroom. We have to have him as an identification. And I don't want to interrupt your thoughts in interviewing this young lady.

. . . .

MR. WILLEMIN: Let me say for purposes of the record that . . .

THE COURT: Yes, yes.

MR. WILLEMIN: . . . at this time, in the . . .

THE COURT: Yes, Mr. Willemin.

MR. WILLEMIN: . . . presence of the jury, there are five deputies and Department of Corrections officials surrounding the defendant, plus one court personnel. All in the presence of the jury, all endeavoring to put a gag in Mr. Collins's mouth.

(DEFENDANT ATTEMPTING TO TALK
THROUGH GAG)

MR. WILLEMIN: And I again would renew my motion for mistrial.

THE COURT: Okay. Denied.

MR. WILLEMIN: Thank you, sir.

(Counsel returned to the trial tables and proceedings in open court resumed.)

(pause) [Struggle with Collins continuing]

. . . .

THE COURT: (after pause) And your first name is Louisa?

THE WITNESS: Lisa.

THE COURT: Lisa. I'm sorry.

THE WITNESS: Yes, sir.

(pause—defendant being gagged)

THE COURT: You want a glass of water?

THE WITNESS: No, I'm all right.

(long pause while defendant being gagged)

(Counsel approached the bench and the following ensued.)

MR. WILLEMIN: Your Honor, will you excuse the jury. They aren't—

MS. O'DONNELL: Please, Your Honor.

MR. WILLEMIN: Looks like it's gonna take some more time.

THE COURT: How long's it gonna take? (loudly) Sheriff, how long is this gonna take?

(no response)

THE COURT: Where's the Sheriff?

THE DEPUTY: Yes, Your Honor?

THE COURT: Huh?

THE DEPUTY: Dave went out to look for tape?

THE COURT: Well how long is this gonna take?

MR. WILLEMIN: They, they need to find, apparently, some tape, Your Honor.

THE DEPUTY: Rick McCauley's getting . . .

MR. WILLEMIN: Your Honor, I would ask that the jury be excused.

THE DEPUTY: ... DUCT TAPE.

THE COURT: Oh, members of the jury, you're excused, please. And I think I'll excuse myself.

THE CLERK: Stand, please.[2]

(RECESS)

After the recess, before the jury was reseated, Collins was taken out of the courtroom. Counsel renewed his motion for mistrial; again, the motion was denied. The trial proceeded.

Later that day, Collins was brought back into the courtroom for two short periods of time to be identified by witnesses. On both occasions he became abusive and was ushered out again. During the balance of his trial, Collins refused repeated invitations to return to the courtroom although he returned for a short time when the jury was instructed. During most of his voluntary absence, Collins viewed his trial on a closed circuit television in a courthouse cell. Finally, Collins returned to the courtroom, without incident, to receive his verdict.

Collins's appeal presents a new twist to the argument typically advanced by a disruptive defendant excluded from the courtroom. Generally, such defendants contend that they were deprived of a fair trial by being removed. *See, e.g., Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). In the case *sub judice,* Collins argues that he was deprived a fair trial because he was *not* removed (or, at least, not removed soon enough). Collins submits that the trial judge abused his discretion in refusing requests to remove him from the courtroom before he disrupted the trial and antagonized and prejudiced the

---

**2.** We have omitted Collins's outbursts from this recitation of the record transcript. Those remarks are so vile and offensive that it would be improper to reprint them here, even with deletions.

jury.[3] Collins argues that the effect of this prejudice was to deny him his constitutional right to a fair trial and that it was error for the trial court to deny his motion for a mistrial.

 Fifteen years ago, we noted that American courts had few precedential guideposts in dealing with disruptive courtroom behavior by an accused. *Jones v. State,* 11 Md.App. 686, 689, 276 A.2d 666 (1971). Since that time, the path has become better marked. The trial judge, in keeping with his obligation to assure the swift and proper administration of justice, may take such precautions as may be necessary to carry out his duty. *Dixon v. State,* 27 Md. App. 443, 451, 340 A.2d 396 *cert. denied,* 276 Md. 741 (1975). The choice of precautions taken is within the sole discretion of the trial judge who is best able to assess the urgency of the situation before him. *See, Id.*

This view was articulated by the Supreme Court in *Illinois v. Allen,* 397 U.S. 337 at 343–44, 90 S.Ct. 1057 at 1061:

> We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations. We think there are at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant like Allen: (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly.

The *Allen* decision, however, offers little guidance in dealing with a disruptive defendant before his conduct reaches the point that his trial cannot be carried on with him in the courtroom. In *Jones, supra,* we suggested that before

---

**3.** We are quite careful to note that Collins points to his conduct alone as the source of the alleged prejudice. We are not called to determine what effect the deputies' efforts to bind and gag Collins in the presence of the jury or the appearance of Collins in handcuffs and muzzle had on his right to a fair and impartial trial.

*Allen*-type sanctions are employed, the trial judge should excuse the jury from the courtroom, admonish the defendant, and warn him that any further disruption may result in the imposition of an appropriate sanction. 11 Md.App. at 694, 276 A.2d 666.

The preference for admonition before expulsion has been expressed elsewhere:

> Public confidence in the trial process requires that removal of defendants be limited to cases urgently demanding that action be taken, that it be done only after explicit warning, that there be a standing opportunity for the defendant to return to the courtroom, and that the burden that absence creates for the defense be kept to the unavoidable minimum.

*A.B.A. Standards for Criminal Justice,* Standard 6–3.8, commentary at 6.44 (2d ed. 1986). Due regard for a defendant's right to be present at trial, to confront witnesses against him, and to assist in the presentation of his defense requires that the trial judge resist expelling a disruptive defendant until "absolutely necessary for the trial to proceed in an orderly fashion." *Jones,* 11 Md.App. at 694, 276 A.2d 666. We see no reason for the trial judge to be less solicitous of these rights merely because the motion to remove the defendant originates from defense counsel. The Rules specifically provide that a defendant "shall be present at all times when required by the court." Rule 4–231(a).

The record shows that when Collins first interrupted the trial, a recess was taken. Soon thereafter, the trial judge excused the jury, warned Collins that he might be excluded and received an assurance of good behavior from the defendant. It was only after Collins reneged on this assurance that the court employed *Allen*-like sanctions, first handcuffing, then gagging, then excluding Collins. Thus, the sequence of precautions followed the *Jones* guidelines quite closely.

██ We perceive no abuse of discretion in the trial judge's refusal to exclude Collins sooner than he did. The essence of Collins's defense was that the victims had misidentified him. In-court identification was, therefore, important to the State's case and, once completed, Collins was permitted to leave the courtroom. Had he been excluded earlier and brought back solely for identification, the timing of his reappearance might jeopardize the credibility of the in-court identification. In any event, Collins's bizarre behavior in front of the jury was consistent with his defense that he was an escaped mental patient who happened to be at the wrong place at the wrong time. In the case at bar, the trial court did not abuse its discretion in refusing to remove Collins before the second victim identified him. Consistent with the American Bar Association standards set forth above, Collins's absence from the courtroom was kept to an unavoidable minimum.

██ Nor can we say that the trial court abused its discretion in denying Collins's motion for a mistrial. The decision whether to grant a mistrial is within the sound discretion of the trial court and, in those cases involving a question of prejudice which might infringe upon the right of a defendant to receive a fair trial, the exercise of that discretion denying a mistrial will not be reversed on appeal "unless it is clear that there has been prejudice to the defendant." *Wilhelm v. State,* 272 Md. 404, 429, 326 A.2d 707 (1974). While Collins's behavior quite probably offended some jurors, we cannot say that it undermined the confidence of their verdict.[4]

The evidence against Collins was compelling and his defense of misidentification was shot when both victims positively identified him as their assailant. A well-behaved Daniel Collins would not likely have received a different

---

4. We do not mean to imply that the State was required to show that Collins's behavior had no effect on the verdict. That standard presupposed prosecutorial misconduct. *See Wilhelm,* 272 Md. at 416, 326 A.2d 707. Here, the misconduct was defendant's.

verdict. Again, Collins's behavior tended to support his defense that he was an escaped mental patient caught in a police dragnet. We are loath to permit defendants to generate mistrials through vile and offensive behavior which affronts the dignity of our courts. The trial court was better situated to assess the prejudical effect, if any, of Collins's antics. We perceive no abuse of discretion in its decision to deny defendant's motion.[5]

## II. *Sentencing*

On January 21, 1986, the court sentenced Collins as follows:

> It is the judgment and sentence of this Court that you, Daniel Dennis Collins, be committed to the custody of the Commissioner of Corrections, and to be confined under the jurisdiction of the Department of Correction, for a period of your life plus fifty years.

Collins reacted by screaming racial and sexual obscenities at the court and counsel. Collins then struggled with his guards, lunged for the State's Attorney, and was dragged, kicking and screaming from the courtroom. Mr. Willemin indicated to the court that all matters in the proceeding were concluded. The court called the next case, *State v. Peltz*. While Mr. Peltz was being brought from the courthouse lock-up, counsel in the *Collins* case approached the bench. The State asked for a clarification of the sentence imposed on Collins and the court agreed to do so "at a later time." Mr. Willemin then left the courtroom.

Two days later, on January 23, Collins's case came on for a "hearing on clarification of sentence." Collins was not present at this hearing, although he was represented by counsel. On January 23, the court clarified its earlier sentence as follows:

---

**5.** Indeed, other courts have held that a jury may properly consider the behavior of an accused, not only on the stand but throughout the trial, in reaching its verdict. *See, e.g., State v. Hutchinson,* 95 Iowa 566, 64 N.W. 610 (1895); *Greer v. State,* 91 Tex.Cr.R. 426, 238 S.W. 923 (1922).

Re: [Lisa K.], Case No. 13795 ... what I wanted to say was, it is the judgment and sentence of this Court that you, Daniel Dennis Collins, be committed to the custody of the Commissioner of Corrections, to be confined under the jurisdiction of the Department of Corrections for a period of thirty years as to count two of the indictment. For a period of your natural life as to count three. For a period of twenty years as to count five. Count six, seven, eight to be merged with count five. And for a period of three years as to count nine, which is to be served concurrently with count five. This sentence, life plus fifty years, to be served consecutive to any sentence which you are now serving. Re: [Joann C.], No. 13794, it is the judgment and sentence of this Court that you, Daniel Dennis Collins, be committed to the custody of the Commissioner of Corrections, and to be confined under the jurisdiction of the Department of Corrections for a period of thirty years as to count one of the indictment. For a period of twenty years as to count two. Counts three, five, six and seven to merge with count one. For a period of three years as to count four, to be served concurrently with the sentence imposed in count two. For a period of three years as to count eight, to be served concurrently with the sentence imposed in count two. This sentence to be served concurrently with the sentence imposed upon you in Case No. 13795. That's the end of that.

Collins attacks his sentence on three grounds: (1) the January 21st sentence is illegal because it is a general sentence; (2) the January 23rd hearing was illegal because it was conducted in Collins' absence; (3) if the January 23rd hearing was legal, the sentence imposed at that hearing resulted in terms of imprisonment concurrent to each other and to the term Collins was serving at the time of his arrest.

The sentence "life plus fifty years" imposed at the January 21st hearing covered all counts of both indictments against Collins. As such, it was a "general sentence."

Collins argues that Rule 4–351(a)(4), which provides that the commitment record shall contain the sentence imposed on each count, implicitly mandates that a specific sentence be imposed on each count on which a defendant is convicted. Before confronting this contention, we digress to clarify the relationship between the two sentencing proceedings.

The January 21st sentencing was a complete sentencing proceeding. Collins was present and represented by counsel. Mr. Willemin indicated that he and his client had reviewed the presentence investigation. Mr. Willemin presented argument in mitigation of punishment. When he concluded this presentation, the court asked defense counsel whether his client wished to address the court. Thus, the opportunity to allocute was clearly presented.[6] The court then directed Mr. Willemin to advise his client of his rights of appeal and sentence review.[7]

The January 23rd hearing was requested by the State in order to obtain clarification "as to ... what counts within [the] indictments the court impos[ed] a sentence." We believe that such a motion is addressed to the general revisory power of the court. Rule 4–345(b) provides:

### SENTENCING—REVISORY POWER OF COURT

(b) *Modification or Reduction—Time for.*—The court has revisory power and control over a sentence upon a motion filed within 90 days after its imposition (1) in the District Court, if an appeal has not been perfected, and (2) in a circuit court, whether or not an appeal has been filed. The court may modify or reduce or strike, but may not increase the length of, a sentence. Thereafter, the court has revisory power and control over the sentence in case of fraud, mistake, or irregularity, or as provided in section (d) of this Rule.

---

6. Collins squandered the opportunity by shouting vile obscenities at the court rather than presenting information in mitigation of punishment.

7. Mr. Willemin's advice was interrupted when Collins attacked him.

Thus, the court enjoys the power to "modify" its sentence, which is to say that it enjoys the power to alter or to change the sentence in incidental or subordinate features. *Black's Law Dictionary*, 905 (5th ed., 1979). We hold that the power to modify a sentence encompasses the power to specify or to clarify which counts under an indictment a general sentence has been imposed. *Accord, U.S. v. Lawrenson*, 196 F.Supp. 838, *aff'd*, 298 F.2d 880, *cert. denied*, 370 U.S. 947, 82 S.Ct. 1260, 8 L.Ed.2d 406 (1962) (correctional power of court includes power to indicate that, in an earlier general sentence, it had intended to impose only one sentence rather than two concurrent sentences under two different counts). Such a clarification constitutes a change to a subordinate feature of the court's sentence, *videlicit:* the identity of the underlying verdict. Thus, in the case at bar, the State's motion for clarification was directed to the court's revisory power pursuant to Rule 4–345.[8]

At the January 23rd revisory hearing, the court specified under which counts its earlier sentence of "life plus fifty years" had been imposed. The effect of the modified or clarified sentence was to strike out the January 21st sentence and any infirmity attaching to it. *See Hurwitz v. State*, 200 Md. 578, 92 A.2d 575 (1952). Consequently, we find it unnecessary to determine whether that sentence was improper because it was general.[9]

Collins next argues that because he was not present at the January 23rd modification hearing, the proceedings were illegal.

---

**8.** Though typically a defendant's motion, there is nothing in the language of Rule 4–345 which precludes the State from moving to revise a sentence.

**9.** We note, however, that in *Vandergist v. State,* 226 Md. 38 (1960), the Court of Appeals held that a general sentence covering all counts of an indictment is not improper so long as the sentence imposed does not exceed the sentence which might have been imposed under the several counts. The effect of the January 23rd hearing in the case at bar was to comply with the "better practice" of sentencing Collins separately on each count. 226 Md. at 42, 92 A.2d 575.

The right of a criminal defendant to be present at every stage of the trial is a common law right guaranteed by Rule 4–231(b), which reads:

PRESENCE OF DEFENDANT

*Right to be Present—Exceptions.*—A defendant is entitled to be present at a preliminary hearing and every stage of the trial, except (1) at a conference or argument on a question of law; (2) when a nolle prosequi or stet is entered pursuant to Rules 4–247 and 4–248; or (3) at a reduction of sentence pursuant to Rules 4–344 and 4–345.[10]

Not every event in the course of a criminal case, however, constitutes a "stage of the trial" giving rise to the right to be present. *See Bunch v. State*, 281 Md. 680, 684–85, 381 A.2d 1142 (1978). Indeed, Rule 4–231(b) makes plain that certain sentencing procedures are among those events to which the right to be present does not attach. That rule also states that a defendant is not entitled to be present at a conference on a question of law. In *Green v. State*, 49 Md.App. 1, 430 A.2d 1122, *cert. denied*, 291 Md. 775 (1981), we held that a defendant had no absolute right to be present at bench conferences during voir dire examination of veniremen where the conferences concerned "legal argument of counsel based only on facts already adduced in [defendant's] presence when he had the full opportunity to give aid to his counsel...." 49 Md.App. at 17–18, 430 A.2d 1122.

In the case *sub judice*, the hearing to modify Collins's sentence was akin to the bench conferences in the Green case. Collins attended the original sentencing and was available to assist his attorney there. No testimony was taken at the subsequent hearing. Collins's attorney raised only legal issues. The court merely identified the counts under which Collins's sentence had been imposed.

---

**10.** Although conducted pursuant to rule 4–345, the January 23rd hearing did not result in a reduction of Collins's January 21st sentence. Consequently, Rule 4–231(b)(3) does not excuse his absence.

Further, Rule 4–345 merely requires that an "opportunity to be heard" be provided before a sentence is modified. That opportunity was provided when Mr. Willemin appeared and argued on behalf of Collins.[11]

Collins disrupted every proceeding he attended in a most base and contemptible manner. On the first day of sentencing, he tried to shout down the court and counsel. He refused to assist his counsel, Mr. Willemin, who presented a capable and dignified defense despite the conduct of his client. At that hearing, Collins spat on and attacked counsel. There was nothing to be gained by requiring Collins's presence at the clarification proceedings.

■■■■■■ Collins asserts that his absence from those proceedings violated his right of allocution guaranteed by Rule 4–342(d). That rule provides:

SENTENCING—PROCEDURE IN NONCAPITAL CASES.

*Allocution and Information in Mitigation*—Before imposing sentence, the court shall afford the defendant the opportunity, personally and through counsel, to make a statement and to present information in mitigation of punishment.

The record shows, and we have stated hereinabove, that Collins was afforded an opportunity to address the court in mitigation at his original sentencing. Collins responded by shouting obscenities at the court. The *opportunity to allocute* must be offered. Rule 4–342. The *right to allocute*, however, may be waived. Campbell, *Law of Sentencing*, § 72 (1978). In the case at bar, Collins waived the opportunity to speak in mitigation, which opportunity the court extended to him. We find no authority to support the suggestion that a defendant has an absolute right to allo-

---

**11.** The "opportunity to be heard" provided under Rule 4–345(c) cannot be interpreted to require the presence of defendant. That rule extends the opportunity to sentence reductions. Rule 4–231(b), however, states quite clearly that the right to be present does not extend to sentence reduction hearings.

cute before his sentence is *modified.* Clearly, because a court may exclude a defendant from a revisory hearing at which only questions of law are presented or an earlier sentence is reduced, Rule 4–231(b), a criminal defendant has no absolute right to allocute before his sentence is modified. *See State v. Byrnes,* 456 A.2d 742, 745 (R.I., 1983). This is particularly true where, as here, the court exercises its revisory power to correct a defect in or to clarify the details of its earlier sentence. In such a case, defendants' words in mitigation are irrelevant to the task at hand.

We perceive no error in the trial court's excluding Collins from the January 23rd modification hearing.

■■■ Collins next asserts that the trial court did not indicate on January 23rd whether the terms imposed in case number 13795 (Lisa K.) were to run concurrently or consecutively to each other. Therefore, he argues, as a matter of law the terms imposed under that case are deemed to run concurrently.

In *Nelson v. State,* 66 Md.App. 304, 503 A.2d 1357 (1986), we held that where the record does not reflect whether sentences, when imposed, were meant to run concurrently or consecutively with each other, the sentences should be construed to be concurrent with each other. On January 21st, the court imposed a sentence covering both cases of "life *plus* fifty years." Two days later, the court modified this sentence so as to assign thirty years to count two of case number 13795; life imprisonment to count three of that case; twenty years to count five; and three years to count nine to be served concurrently with count five. All other counts under that case were merged. The court then referred to the sentence imposed under case number 13795 as "life plus fifty."

■■■ We do not believe that the January 23rd sentence was sufficiently ambiguous to impose the presumption of leniency expressed in *Nelson.* The term imposed under count nine was expressly made concurrent to that which was imposed under count five. Terms imposed under

counts four and eight in case number 13796 (Joanne C.) were expressly made concurrent to the term imposed under count two thereof. The entire sentence in case 13796 was made concurrent to the sentence in case 13795. When it imposed terms of imprisonment under counts two, three, and five in the Lisa K. case, however, the court did not indicate that the terms were to run concurrently. The maximum penalties available under counts two, three, and five were thirty years, life, and twenty years respectively. If made concurrent with each other, a term of life imprisonment would result. If made consecutive to each other, a total of life increased by fifty years would result. Counts two and five were clearly stacked when described as "fifty years." The court's intention that this term should follow the life term is apparent by its use of the word "plus." Courts are encouraged to phrase their sentences with the word "consecutive" when successive terms are intended so that the accused and those charged with the execution of the sentence are advised of its duration. We do not, however, regard the term "consecutive" a talisman and where the duration of a sentence is otherwise discernable from the record, it will be upheld without resort to the presumption of leniency.

Therefore, Collins's assertion that his sentence, as modified, does not indicate whether the terms imposed are to run concurrently or consecutively is without merit.

Finally, Collins argues that by indicating for the first time at the modification hearing that the sentence imposed under both cases was to run consecutively to a sentence Collins was serving at the time of his arrest, the court unlawfully increased his January 21st sentence.

■ The presumption of leniency made applicable in *Nelson, supra,* to cases in which the record does not reflect whether several terms imposed at one sentencing were meant to run concurrently or consecutively with each other, has also been applied to cases in which the sentencing judge failed to indicate how the sentence he imposed was to run

vis-a-vis a sentence imposed on the defendant by another court. *See Wharton's Criminal* Procedure, § 629 (12th Ed. Torcia). Indeed, in *Nelson*, we analogize from *Stanton v. State*, 290 Md. 245, 428 A.2d 1224 (1981), a case which inferentially supports the application of the prior-sentence rule of leniency, in adopting the multiple-sentence rule of leniency. Consistent with *Nelson* and *Stanton*, we hold that, where the record does not reflect whether a sentence, when imposed, is meant to run concurrently or consecutively with a sentence to which the defendant is already subject, the present sentence is construed to run concurrently with the prior sentence.

In the case at bar, the trial court did not indicate whether the sentence of "life plus fifty years" was to run consecutively to the sentence Collins was serving at the time of his arrest. Indeed, the court made no mention of the prior sentence. Consequently, the January 21st sentencing must be construed to have imposed a term of "life plus fifty years" to run concurrently with any sentence Collins was then serving.

At the January 23rd modification hearing, however, the trial court stated:

[t]his sentence life plus fifty years, to be served consecutive to any sentence which you are now serving.

The law is quite clear that when a concurrent sentence is made consecutive, there has been a modification upward. *Wilson v. State*, 45 Md.App. 675, 676, 415 A.2d 605 (1980); *State v. White*, 41 Md.App. 514, 517, 397 A.2d 299 (1979). The law is equally clear that a court may not increase a sentence in exercising its revisory powers. Rule 4–345(b). Consequently, when the trial court indicated on January 23rd that Collins's sentence was to run consecutively to any sentence he was then serving, the court exceeded its powers. For that reason, we shall vacate that portion of the sentence that would render it consecutive to any sentence then being served and remand this case to the Circuit Court for Howard County with instructions to the Clerk to note

that the subject sentences are concurrent with any that the appellant was serving at the time of sentencing.

CONVICTIONS AFFIRMED; SENTENCE VACATED IN PART; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; APPELLANT TO PAY THE COSTS.