**Craig W. TATUM, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 95–CM–1362.**

District of Columbia Court of Appeals.

Argued April 24, 1997.

Decided Nov. 26, 1997.

---

A. Fulani N. Ipyana, Public Defender Service, with whom James Klein and Gretchen Franklin, Public Defender Service, were on the brief, for appellant.

Catherine F. Sheehan, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney at the time the brief was filed, and John R. Fisher and Thomas C. Black, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY, FARRELL, and REID, Associate Judges.

TERRY, Associate Judge:

Following a two-day non-jury trial, appellant Tatum was convicted of one count of assault, in violation of D.C.Code § 22–504(a) (1996). The court sentenced him to 180 days in jail, but suspended execution of the sentence and placed him on six months' probation. On appeal he contends that the trial court's order directing that he be removed from the courtroom while a defense witness was on the stand violated his rights under the Sixth Amendment. We agree and reverse.

## I

### A. *The Government's Evidence*

The government's only witness was Officer Michael Howard of the Metropolitan Police. Officer Howard testified that on February 17, 1995, at approximately 11:30 p.m., he was at a Chinese carry-out restaurant in the 1000 block of Bladensburg Road, Northeast. Howard and his partner, Jeffrey McCormick, were both off duty at the time. Officer McCormick waited in the car while Howard approached the restaurant to purchase some food.

As he was standing at the carry-out window, Officer Howard heard a man behind him ask, "You're the police?"[1] The ques-

---

1. Officer Howard was dressed in blue "military-style" utility pants, military combat boots, a black turtleneck shirt, and a white baseball cap bearing the words "George Mason University." Howard testified that although his gun and badge were not visible (they were covered by his shirt), "it was obvious I was most likely a police officer."

tioner was appellant, Craig Tatum. Officer Howard answered, "Yes, sir, I am, I'm a police officer." Tatum walked around to Howard's left and stated, "I'm going to hit you upside the head with this bottle, you white mother-fucker." Officer Howard then noticed that Tatum was holding a large empty beer bottle by the neck. As he raised the bottle to shoulder height, Officer Howard unsnapped his gun holster and displayed his badge. Howard testified that he "didn't know exactly" whether Tatum was going to hit him with the bottle, but he believed there was "a pretty good chance" that he would do so. Tatum continued to berate the officer, saying, "Fuck you, white mother-fucker," "Fuck the police," and "You had my people in slavery," and repeating that he was going to "hit [Howard] upside the head."

Officer Howard nevertheless completed his purchase from the carry-out and returned to his car to seek the assistance of his partner in placing Mr. Tatum under arrest. When the two officers went back to the carry-out about half a minute later, Tatum turned to Officer McCormick and said, "Get away from me, get away from me, I'm going to hit you with this bottle." Officer McCormick grabbed Tatum, held him against the wall, and shook his arm until the bottle fell to the ground. Tatum, however, continued to resist,[2] and the officers had difficulty controlling him because they did not have any handcuffs with them. Eventually they managed to get him outside, where they called for backup assistance, and another officer came and placed Tatum under arrest.

### B. *The Defense Evidence*

Tatum presented two witnesses at trial: Raymond Stargel, the arresting officer, and Feng Szetho, the employee who was working at the carry-out window that evening. Officer Stargel testified that although he arrested Mr. Tatum and prepared the police reports on the arrest, he had not been present during the assault and did not observe it. He said that Officer Howard had told him that Tatum had threatened him with a bottle and that the bottle was "across the street."

Stargel explained that his observation of a broken bottle on the ground near the arrest site, coupled with the fact that Mr. Tatum was ultimately apprehended in the median strip of Bladensburg Road, let him to conclude that Tatum had thrown the bottle and run. Stargel testified that Howard never told him either that the bottle had been thrown or that Tatum had run.

Feng Szetho testified that at the time of the altercation Mr. Tatum was "dirty and drunk" and was talking a lot when he ordered his food; she also recalled that Officer Howard was a "nice guy" and a regular customer. When Ms. Szetho told Officer Howard that they did not have his preferred brand of beer, she heard Tatum say, "White man don't drink black beer, he drink white beer." Ms. Szetho saw Howard turn to face Tatum, who was holding a 32–ounce bottle of King Cobra malt liquor, but she could not recall whether he was shaking the bottle at Howard or holding it up in order to drink from it. She heard Tatum "scold" Officer Howard about how his ancestors had been treated by white people, and heard Howard respond that he had "not done anything to you today." Mr. Tatum continued to berate Officer Howard, who left the carry-out smiling and returned with his partner; the two officers then took Tatum outside. Ms. Szetho said that she was "kind of busy" and "didn't bother about them," but that she heard a "little bit of this conversation" and understood what they were talking about, even though at the time she was standing behind a thick bullet-proof window, which made it difficult to hear.

### C. *Appellant's Courtroom Behavior*

Mr. Tatum interrupted the trial proceedings on several occasions by laughing, nodding his head, or talking out loud. During Officer Howard's testimony, the following occurred:

Q. [by the prosecutor]: All right. And then what happened?

---

2. During the encounter, Mr. Tatum kept shouting obscenities at the officers and making such statements as "All you cops are going to die."

A. He [Tatum] said, "I'm going to come upside your head."

THE DEFENDANT: (Laughing.) Excuse me.

THE WITNESS: "I'm going to take this bottle and hit you upside the head with it, you white MF."

THE DEFENDANT: (Laughing.)

THE COURT: Excuse me, excuse me just a second.

THE DEFENDANT: Excuse me.

THE COURT: You can either stay with us, or you can go.

THE DEFENDANT: Okay. He's lying so much that—

THE COURT: Excuse me. I make that determination, and you don't, and you need to be quiet. And as I say, you can sit here quietly, or you can go.

MR. KRIDER [the prosecutor]: Is it okay if we go ahead?

THE COURT: Yes.

Q. [by the prosecutor]: You need to tell the Court exactly what he said. What did he say?

A. He said, "I'm going to hit you upside the head with this bottle, you white mother fucker."

THE DEFENDANT: (Laughing.)

Q. And what—

THE COURT: All right, Ms. Thomas, is there some problem with Mr. Tatum?

MS. THOMAS [defense counsel]: Your Honor, I talked to Mr. Tatum—

THE DEFENDANT: I'll leave, then.

THE COURT: No, no, no, you can go sit back here with the Marshal.

THE DEFENDANT: I'll stay.

THE COURT: No, no, I said you can go sit in the back with the Marshal.

MS. THOMAS: Your Honor, may we approach?

THE COURT: Yes, you may.

[Bench conference]

MS. THOMAS: Your Honor, I understand that the Court did warn or admonish Mr. Tatum.

THE COURT: More than once, yes, I did.

MS. THOMAS: We would request that Mr. Tatum be given an opportunity. I would like an opportunity to speak with him. He does have a right to be present during his trial.

THE COURT: He has a right to be present as long as he's not interrupting the proceedings.

MS. THOMAS: I understand that, Your Honor. And I—I mean, I spoke to him rather sharply and quickly, and I'd like an opportunity to speak with him and stress the importance of his presence and his behaving in the fashion that's acceptable to the Court proceedings. As the Court knows, Mr. Tatum is not a stranger to this Court or to these proceedings, and this is unusual conduct for him.

THE COURT: Well, I'm going to let you go back there and talk with him, and you need to explain to him that if there is a further outbreak in this court, he won't just be sitting back there during the course of these proceedings, that I can find him in contempt, and he can be back there quite a while.

Following a two-minute recess, the following exchange took place:

THE COURT: All right, Ms. Thomas.

MS. THOMAS: Mr. Tatum is going to act appropriately, Your Honor, if the Court allows him to resume—

THE COURT: All right, Marshal, will you get Mr. Tatum?

\* \* \* \* \*

THE COURT: Now, Mr. Tatum, you do understand that I don't want to hear anything else from you.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Anything.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Until you're sitting up there.

THE DEFENDANT: Yes.

THE COURT: You may have a seat.

THE DEFENDANT: All right.

Officer Howard then concluded his testimony. As he left the witness stand, Mr. Tatum said to the judge, "Your Honor, I want to

apologize for disrupting the proceedings earlier, the court proceedings." The judge responded, "All right, that's the last I want to hear from you."

Tatum's self-restraint was short-lived. During the testimony of the final defense witness, Feng Szetho, Tatum interrupted the proceedings once again:

Q. [by defense counsel]: ... [D]o you remember the black man being dragged out of the carryout?

A. (In English) The guy buy one egg roll, is that you?

THE DEFENDANT: (Nodding head.)

THE WITNESS (In English): Okay, now I remember that.

MR. KRIDER: Your Honor, the defendant is nodding his head.

THE WITNESS (In English): And the time you are drunk, right?

THE COURT: Ma'am, ma'am, ma'am, you're here to answer questions. You don't get to ask any questions, and you definitely don't get to ask him any questions. And I know he knows he'll be sitting in the back if he nods his head one more time.

Ms. Szetho's testimony then resumed, and after a minute or two the following occurred:

Q. [by defense counsel]: Okay. And what happened when the police came?

A. (In English) And later on, the policeman is my regular customer. He used to buy beer, 'Waukee Best, twelve-ounce, six-pack, I still remember that. And so happen that day I run out of stock, no stock. I said I don't have 'Waukee Best.

THE COURT REPORTER: Walking what?

THE WITNESS (In English): The beer, 'Waukee beer.

MS. THOMAS: What beer?

THE WITNESS (In English): W-a-l-k-e [*sic*] B-e-s-t.

THE DEFENDANT: Excuse me. Milwaukee Beer.

THE COURT: Oh, no, absolutely not. Okay, Officer, he's going to the back. Goodbye.

THE DEFENDANT: I'm just—

THE COURT: Goodbye. Don't open your mouth. Goodbye.

The marshal escorted Mr. Tatum out of the courtroom, and his counsel was directed to continue in his absence.[3] Counsel did not renew her earlier objection to her client's removal, but resumed her examination of the witness. Ms. Szetho was the final witness to testify that day; Tatum was permitted to return to the courtroom the following morning.

## II

This appeal presents two questions. First, we must determine whether the trial court erred when it excluded Mr. Tatum from the courtroom during a portion of Ms. Szetho's testimony. Second, if that ruling was error, we must decide whether the error warrants reversal of Tatum's conviction.

■ Among "the most basic of the rights guaranteed by the [Sixth Amendment] is the accused's right to be present in the courtroom at every stage of his trial." *Illinois v. Allen*, 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970); *see Heiligh v. United States*, 379 A.2d 689, 693 (D.C.1977). Nevertheless, the right to be present in the courtroom is not absolute, and a defendant may forfeit that right by engaging in disruptive behavior. *See generally* Super. Ct.Crim. R. 43(b).[4] *See also Briggs v. United States*, 525 A.2d 583, 589 (D.C.1987) (defendant's right to be present at trial "is not unlimited"); *Heiligh, supra*, 379 A.2d at 693; *Hazel v. United States*, 353 A.2d 280, 282 (D.C.1976) (defendant's right to be present at trial "may be lost by misconduct"). The precise question

---

**3.** Ms. Szetho's testimony lasted for approximately thirty minutes. Tatum was absent for a portion of that time which covered fifteen transcript pages.

**4.** Rule 43(b) provides in pertinent part:
The further progress of the trial ... shall not be prevented and the defendant shall be con-

sidered to have waived the right to be present whenever a defendant, initially present ... [a]fter being warned by the Court that disruptive conduct will cause the removal of the defendant from the courtroom, persists in conduct which is such as to justify exclusion from the courtroom.

before us is whether Tatum's courtroom behavior was sufficiently disruptive to warrant his removal. We conclude that it was not.

The leading case on this subject is *Illinois v. Allen.* In that case the Supreme Court found no error in a trial judge's decision to remove a defendant who, despite repeated warnings, "insist[ed] on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial [could not] be carried on with him in the courtroom." 397 U.S. at 343, 90 S.Ct. at 1060–1061 (footnote omitted). Shortly after the beginning of the trial, while the *voir dire* was being conducted, he had "started to argue with the judge in a most abusive and disrespectful manner." *Id.* at 339, 90 S.Ct. at 1059. A few minutes later, after objecting to the participation of his court-appointed attorney in the proceedings, the defendant announced, "When I go out for lunchtime, you're [the judge] going to be a corpse here." *Id.* at 340, 90 S.Ct. at 1059. He then tore up a file in the possession of his attorney and threw its contents on the floor. The judge warned the defendant that he would be removed from the courtroom if he engaged in another outburst, but the defendant continued to talk back to the judge, saying:

> There's not going to be no trial, either. I'm going to sit here and you're going to talk, and you can bring your shackles out and straitjacket and put them on me and tape my mouth, but it will do no good because there's not going to be no trial.

*Id.* The defendant was later removed from the courtroom, and the trial proceeded in his absence.

After a recess for lunch, the defendant appeared before the judge and expressed his willingness to behave after being warned that he would be removed if he interfered with the proceedings again. Soon thereafter, however, when defense counsel moved to have the witnesses excluded from the courtroom, the defendant protested:

> There is going to be no proceeding. I'm going to start talking and I'm going to keep on talking all through the trial. There's not going to be no trial like this. I want my sister and my friends here in court to testify for me.

*Id.* at 341, 90 S.Ct. at 1059. The defendant was removed from the courtroom a second time and thereafter was brought back only for purposes of identification. At the conclusion of the state's case, the defendant was permitted to return to the courtroom, where he remained for the rest of the trial.

In ruling that the defendant could constitutionally be removed from the courtroom, the Supreme Court stressed that he had been "repeatedly warned by the trial judge that he would be removed ... [and that he] would not have been at all dissuaded by the trial judge's use of his criminal contempt powers." *Allen,* 397 U.S. at 346, 90 S.Ct. at 1062. Essential to the Court's holding was the notion that a defendant could not "be permitted by his disruptive conduct indefinitely to avoid being tried on the charges brought against him." *Id.*

■ Although Criminal Rule 43 authorizes the removal of a defendant from the courtroom in certain situations, such a removal during the testimony of a witness is an extreme sanction, and "courts must indulge every reasonable presumption against the loss of constitutional rights." *Id.* at 343, 90 S.Ct. at 1060; *see Jones v. State,* 11 Md.App. 686, 690–92, 276 A.2d 666, 669 (1971) (removal was permissible "only under the direst necessity and only after every earnest effort to avoid the impasse had been tried and failed").

This court has had few opportunities to clarify the scope of Rule 43 as it relates to the Sixth Amendment. Several federal and state courts, however, have held that under *Illinois v. Allen,* a defendant may constitutionally be excluded from the courtroom during the testimony of a witness only when his behavior is extreme, abusive, disrespectful, or likely to hinder seriously the progress of the trial. Behavior that is merely disruptive is insufficient under *Allen* to justify removal. *See, e.g., Foster v. Wainwright,* 686 F.2d 1382, 1387–1389 (11th Cir.1982) (exclusion of defendant upheld after he repeatedly challenged the court's authority and was not deterred by the court's threat to hold him in contempt), *cert. denied,* 459 U.S. 1213, 103 S.Ct. 1209, 75 L.Ed.2d 449 (1983); *United*

*States v. Kizer,* 569 F.2d 504, 506–507 (9th Cir.) (exclusion of defendant upheld after he interrupted the prosecutor's summation and argued with the court in front of the jury), *cert. denied,* 435 U.S. 976, 98 S.Ct. 1626, 56 L.Ed.2d 71 (1978); *People v. Davis,* 851 P.2d 239, 243–244 (Colo.App.1993) (exclusion of defendant upheld after he spat in the prosecutor's face, fought with deputy sheriffs, shouted obscenities at a prosecution witness, and physically attacked that witness in the courtroom until he was restrained by three deputy sheriffs); *State v. Callahan,* 93 N.C.App. 579, 582–584, 378 S.E.2d 812, 814 (1989) (exclusion of defendant upheld when he repeatedly interrupted the proceedings by shouting and attempting to leave the courtroom after his request for a continuance to retain new counsel was denied); *Dotson v. State,* 785 S.W.2d 848, 853–854 (Tex.Ct.App. 1990) (exclusion of defendant upheld when he rejected the assistance of court-appointed counsel, insisted on addressing the court directly, and "engaged in a violent scuffle with the bailiff").

▪ In the instant case, Tatum's behavior was certainly disruptive, but it did not rise to the level required by *Allen.* Indeed, there were only three main interruptions: (1) laughing during the testimony of Officer Howard; (2) nodding in response when Ms. Szetho directly asked him a question while she was testifying; and (3) repeating two words spoken by Ms. Szetho that were apparently not understood by counsel or the court reporter.[5] The crucial distinction between the instant case and those in which a defendant's removal has been upheld is that Tatum's conduct was neither abusive, disrespectful, nor obscene, nor was it likely to obstruct the progress of the trial. The record makes clear that although Mr. Tatum's actions were distracting, they were not intended to impede or disrupt the proceedings, nor were they likely to have that effect. We note, moreover, that this was a bench trial, a fact that further reduces the possibility that Mr. Tatum's behavior warranted removal. There was no jury whose verdict might have been swayed by his conduct, and we are confident that the trial judge was capable of disregarding Mr. Tatum's disruptions when weighing the testimony that came from the witness stand.

▪ The government maintains that even if the trial court's decision to remove Mr. Tatum from the courtroom was error, the error was harmless. We cannot agree. This court has expressly held that the erroneous exclusion of a defendant during the testimony of a witness can almost never be harmless because it infringes the defendant's rights under the Sixth Amendment. *See Black v. United States,* 529 A.2d 323, 324–325 (D.C.1987) (when trial went forward despite defendant's involuntary absence due to car trouble, reversal was required in order to preserve defendant's Sixth Amendment right to be present during the testimony of witnesses). In *Black* we recognized a distinction between a defendant's general right to be present under Rule 43 and a defendant's constitutional right to be present during the testimony of witnesses:

> In undertaking harmless error analyses in cases involving absent defendants, we have explicitly distinguished between violations of the right of presence in which Fifth and Sixth Amendment rights are implicated, and violations in which those constitutional rights are not involved.

*Id.* at 324. Our decision in *Black* relied on an earlier case, *Miller v. United States,* 250 A.2d 573 (D.C.1969), in which we held that the defendant's "right to be present in court while witnesses [are] testifying [is] so fundamental to a fair trial that we will not pause to consider whether its infraction caused prejudice, if indeed this could be ascertained reasonably." *Id.* at 576; *see Black,* 529 A.2d at 324. Because Tatum was erroneously excluded from a portion of his trial which included witness testimony, *Black* and *Miller* preclude a finding of harmless error.

Tatum's conviction is therefore reversed. The case is remanded for a new trial or for

---

5. There was evidently a language barrier involved in Ms. Szetho's testimony, despite the fact that an interpreter was present to provide assistance.

other proceedings consistent with this opinion.

*Reversed and remanded.*